**CYGNUS CORPORATION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–699C.**

United States Court of Federal Claims.

Dec. 3, 2004.

Hilary S. Caimie, Vorys, Sater, Seymour and Pease, LLP, Washington, D.C., for plaintiff. Of counsel was Melissa M. Nichols, Vorys, Sater, Seymour and Pease, LLP, Alexandria, VA.

Kelly B. Blank, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch. Of counsel was Mogbeyi E. Omatete, General Attorney, Department of Health and Human Services, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This contract case is before the court on defendant's motion for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), along with plaintiff's cross-motion for summary judgment. Plaintiff, Cygnus Corporation, Inc. ("Cygnus"), alleges that the government is liable for breach of a contract under which Cygnus's predecessor in interest, Herner & Company ("Herner"), provided the Office of Alternative Medicine ("OAM") of the National Institutes of Health[1] with two separate services relating to information technology. Cygnus brings this action pursuant to the Contract Disputes Act[2] based on a claim for equitable adjustment in the amount of $585,452.46 for work performed during four option years in which the government exercised its option for only one of the two services but continued paying at a lower rate specified for performing both services.

The government's primary argument is that Herner signed a bilateral modification to the contract pursuant to which Herner in effect manifested its assent to perform one of

---

1. The OAM is now known as the National Center for Complementary and Alternative Medicine ("NCCAM"). Plaintiff's Statement Of Uncontroverted Facts ("PF") ¶ 4; Defendant's Proposed Findings Of Uncontroverted Facts ("DF") ¶ 1 & n.1.

2. The Contract Disputes Act of 1978 ("CDA"), as amended, is codified at 41 U.S.C. §§ 601–613.

the services at the lower pricing rate provided for performance of both services during each of the option years. The government additionally asserts that the doctrine of laches bars Cygnus's claim because Cygnus did not object to the pricing until after it entered into a novation of, and assumed, its predecessor's contract. Alternatively, the government seeks a partial summary judgment that it is not liable for claims accruing prior to the novation, contending that certain language in the novation agreement expressly releases the government from any claims arising prior to the novation.

The parties have fully briefed their cross-motions, and a hearing was held on September 28, 2004. For the reasons that follow, the government's motion for summary judgment is granted and Cygnus's cross-motion is denied.

## BACKGROUND [3]

On April 12, 1996, OAM issued a solicitation for implementation of two separate operations: an information clearinghouse on alternative medicine and a database of scientific publications and related materials on the same subject. PF ¶ 5; Defendant's Appendix in Support of Its Motion for Summary Judgment ("Def.'s App.") 1, 6. The solicitation instructed offerors to make separate pricing proposals for each of the two services but allowed an additional submission of an alternate pricing proposal for award of a contract covering both services. Def.'s App. 6–7, 9.[4] Cygnus's predecessor in interest, Herner, submitted a proposal on June 4, 1996 that offered two different pric-

ing plans. PF ¶¶ 12–13; DF ¶ 3; Plaintiff's Appendix ("Pl.'s App.") 100–25. One plan proposed pricing for an award for either service, and the other, an alternative staffing plan, proposed pricing for an award for both services. *Id.* The latter plan offered lower unit prices, based on Herner's expectation that such an award would result in lower overhead costs and increased efficiencies, and Herner's proposal specified that "[t]his plan is based on Herner and Company receiving the award for both" services. Pl.'s App. 103. On September 30, 1996, the government awarded Herner a fixed-price requirements contract with a base year from September 30, 1996 through September 29, 1997, with four one-year options for renewal. Def.'s App. 34, 69. The contract included both the clearinghouse and database projects and incorporated Herner's proposal. Def.'s App. 34, 36–45. The contract was performed during the base year, with the government paying at the rate reflected in Herner's alternate staffing plan.

On June 25, 1997, the project officer sent a message by electronic mail to the contracting officer, Anthony Revenis, stating that OAM would not be exercising its renewal option. Def.'s App. 95; *see also* Pl.'s App. 628 (Revenis Dep. at 101). Mr. Revenis notified Herner of this decision on the following day. Def.'s App. 96. *See also* PF ¶ 40; Pl.'s App. 628 (Revenis Dep. at 101). By a letter dated July 14, 1997, Herner requested a meeting "to clarify the reasons for not exercising the Option." Def.'s App. 97–98. *See also* Pl.'s App. 628 (Revenis Dep. at 101). The parties met in August and September 1997 for that

---

3. The facts recited here do not constitute findings of fact by the court but rather reflect undisputed facts and circumstances unless otherwise noted.

4. Specifically, the solicitation stated in pertinent part:

Please note that the technical proposal must be broken down so that each section of the statement of work may be evaluated by a different technical evaluation committee. The government would prefer to make only a single award in order to simplify administration and responsibility issues but reserves the right to make split awards if it would be in the best interest of the government. For this reason, firms are encouraged to make proposals for each section of the statement of work ["SOW"].

Offer[ors] are requested to comment on whether a split award would result i[n] any loss of efficiency for the government or the contractor, particularly for sections I[a]nd II of the SOW.

Offerors are instructed to provide pricing based upon the assumption that they will receive [an] award for only one section of the [SOW], but they may provide a formula for alternate pricing in the event that they receive [an] award for multiple sections.

Def.'s App. 6–7. *See also* Def.'s App. 9 (containing materially identical language in Section L, "Instructions, Conditions, and Notices to Offeror").

purpose. PF ¶ 42; Pl.'s App. 210 (Revenis's notes of a meeting on Aug. 13, 1997), 211 (Revenis's notes of a meeting on Sept. 2, 1997), 628 (Revenis Dep. at 101), 630–33 (Revenis Dep. at 109–123); Def.'s App. 132–33 (McRae Dep. at 18–19). Thereafter, on September 30, 1997, Cameron McRae, Herner's Vice President of Administration & Finance, and Mr. Revenis signed a single-page "Amendment of Solicitation/Modification of Contract." That Amendment provided in pertinent part:

1. The Publication/Database (Section II) of all option years is deleted (Pages B.5, B.7, B.9 & B.11.)

2. Option year one, listed at page B.4 is hereby exercised (for the Clearinghouse only).

3. The contract ceiling amount is increased by $971,913.56, from $1,389,496.54 to $2,361,410.10.

4. The alternate project officers listed on page G–1 are deleted.

5. The contract performance period is extended to 30 September 1998.

Pl.'s App. 41. The contract ceiling amount increase of $971,913.56 was the same figure as that set forth in Herner's alternate staffing plan for the clearinghouse project during the first option year. Pl.'s App. 118; DF ¶ 9.

Slightly more than three months later, in January 1998 OAM's administrative officer sent a message by electronic mail to the project officer and Mr. Revenis stating that Herner wanted to schedule a meeting to discuss "an adverse claim" regarding pricing. Pl.'s App. 215; DF ¶ 10. Internal correspondence by electronic means indicates that the agency twice postponed the meeting with Herner, and there is no evidence in the record that the meeting ever took place. Pl.'s App. 216–19; DF ¶ 10.

On September 11, 1998, Mr. Revenis exercised the second option year for the clearinghouse project, extending the performance period through September 30, 1999 and increasing the ceiling amount by $990,675.48, again as proposed in Herner's alternate staffing plan. Pl.'s App. 39, 120; DF ¶ 11.

Cygnus succeeded to Herner's interest by an asset purchase agreement, and Herner, Cygnus, and the government entered into a novation agreement on October 15, 1998, pursuant to which Cygnus became the successor in interest to Herner for this and several other contracts. Pl.'s App. 33–38; DF ¶ 12. Several days later Mr. Revenis issued a modification to the contract, incorporating the novation agreement and recognizing Cygnus as Herner's successor in interest. Pl.'s App. 32; DF ¶ 13. The novation was effective January 30, 1998, as provided in the asset purchase agreement between Herner and Cygnus. Pl.'s App. 33. The following year, on August 26, 1999, the government exercised its third option, increasing the ceiling by $1,029,717.20, the ceiling price indicated in Herner's alternate staffing plan. Pl.'s App. 31, 122; DF ¶ 15. The final option was exercised on October 10, 2000, and the ceiling was again increased in accordance with the alternate staffing plan. Pl.'s App. 29, 124; DF ¶ 17.

By a letter dated August 11, 2000 addressed to Mr. Revenis, Cygnus requested an equitable adjustment in the amount of $446,866.28. Pl.'s App. 239–48; DF ¶ 16. On November 6, 2000, Mr. Revenis preliminarily denied Cygnus's request, reasoning that Herner had executed the original modification without a reservation of claims and that the novation agreement likewise contained no such reservation. Def.'s App. 124–25; PF ¶ 66. Mr. Revenis issued his final decision on March 20, 2001, denying Cygnus's request for the reasons set out in his first letter. Pl.'s App. 249–50; DF ¶ 19.

Cygnus filed its complaint in this court on December 18, 2001.[5]

## STANDARD FOR DECISION

Summary judgment may be granted if the record demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is "genuine" if it "may reasonably be resolved in

---

5. The complaint was filed within twelve months after Cygnus received the contracting officer's

final decision dated March 20, 2001 and was thus timely. *See* 41 U.S.C. § 609(3).

favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. A fact is "material" if it would affect the outcome of a case. *Id.* at 248, 106 S.Ct. 2505. When deciding these issues, a court must resolve all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When considering cross-motions for summary judgment, courts evaluate each motion on its own merits and resolve any reasonable inferences against the moving party. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir.1987). Denial of both motions is warranted if genuine disputes exist over material facts. *Id.*

## ANALYSIS

### A. *Whether the Doctrine of Laches Bars Cygnus's Claim*

■ Preliminarily, the court must address whether Cygnus's claim is barred by the affirmative defense of laches. That defense requires a showing of "(1) unreasonable and unexcused delay by the claimant, and (2) prejudice to the other party, either economic prejudice or 'defense prejudice'-impairment of the ability to mount a defense. . . ." *Mississippi Dep't of Rehab. Servs. v. United States*, 61 Fed.Cl. 20, 30 (2004) (quoting *JANA, Inc. v. United States*, 936 F.2d 1265, 1269 (Fed.Cir.1991)). Because laches is an affirmative defense, the burden of proving it must be borne by the government. *Cane Tennessee, Inc. v. United States*, 44 Fed.Cl. 785, 795 (1999) (citing *Cornetta v. United States*, 851 F.2d 1372, 1380 (Fed.Cir.1988) (*en banc*)). In the instant case, the government attempts to satisfy its burden by arguing that the three-year period between execution of the first modification and filing of Cygnus's claim was an undue delay, and by asserting, without proffering any evidence, that the government was economically prejudiced by that delay. Def.'s Mot. at 12–15; Def.'s Reply at 12–15.

■ Because laches is an equitable doctrine, in actions at law for which " 'a limitation on the period for bringing suit has been set by statute, laches will generally not be

invoked to shorten the statutory period.' " *Mississippi Dep't of Rehab. Servs.*, 61 Fed. Cl. at 30 (quoting *Advanced Cardiovascular Sys. v. SciMed Life Sys.*, 988 F.2d 1157, 1161 (Fed.Cir.1993)). *Accord Cane Tennessee*, 44 Fed.Cl. at 795. As a conceptual matter, an exception to that general rule may be established upon a showing of sufficient prejudice to the government, *Cane Tennessee*, 44 Fed. Cl. at 795, and in this respect the government bears a relatively heavy burden of proof. *See, e.g., Cornetta*, 851 F.2d at 1380. In the present case, Cygnus filed its claim within the six-year limitation period specified in the Contract Disputes Act. *See* 41 U.S.C. § 605(a). Because the government has not carried its burden to demonstrate that it has been sufficiently prejudiced by any delay, deviation from the general rule is not appropriate in this case.

" '[E]conomic prejudice [. . .] centers on consequences, primarily monetary, to the government should the claimant prevail.' " *Cane Tennessee*, 44 Fed. Cl. at 796 (quoting *Cornetta*, 851 F.2d at 1378). In particular, " '[e]conomic prejudice may arise where a defendant and possibly others will suffer the los[s] of monetary investments or incur damages which likely would have been prevented by earlier suit.' " *Id.* (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed.Cir.1992)). The government avers that Cygnus's delay denied the government "the opportunity to resolicit the contract, convert the project to an in-house endeavor, or negotiate a new agreement with Cygnus." Def.'s Reply at 14–15. *Accord* Def.'s Mot. at 13. However, the government has not identified any evidence showing that these foregone opportunities were viable or would likely have been less costly than exercising the option years. Accordingly, as the movant for summary judgment with respect to the affirmative defense of laches, the government has failed to satisfy its initial burden, rendering a summary disposition of this issue inappropriate. *See generally Bannum, Inc. v. United States*, 59 Fed.Cl. 241, 243–44 (2003) (discussing the two-part, burden-shifting procedural scheme for addressing summary judgment). *But cf. Mexican Intermodal Equip., S.A. de C.V. v.*

*United States*, 61 Fed.Cl. 55, 71–72 (2004) (weighing evidence on summary judgment).

### B. *Whether the Novation Agreement Releases the Government from Liability*

■ In the alternative, the government seeks a partial summary judgment that the novation agreement executed on October 15, 1998 "completely discharged any obligations" the government owed to Herner or Cygnus that accrued prior to the date of that agreement. Def.'s Mot. at 17; Def.'s Reply at 17. The government purports to find language of general release in Paragraph (b)(6) of the novation agreement, which provides:

> All payments and reimbursements previously made by the Government to the Transferor, and all other previous actions taken by the Government under the contracts, *shall be considered to have discharged those parts of the Government's obligations under the contracts.* All payments and reimbursements made by the Government after the date of this Agreement in the name of or to the Transferor shall have the same force and effect as if made to the Transferee, and shall constitute a complete discharge of the Government's obligations under the contracts, to the extent of the amounts paid or reimbursed.

Pl.'s App. 35 (emphasis added). The government asserts that this provision releases it not only from all obligations it had already paid to date, but also from "any claim relating to the Government's deletion from the contract of task two in the bilateral modification-which was 'a previous action taken by the Government.'" Def.'s Mot. at 16. Tellingly, the government has cited no authority in support of its interpretation, despite the fact that the entire novation agreement at issue here is identical to the boilerplate form for novation agreements set out in the Federal Acquisition Regulations ("FAR"). *Compare* Pl.'s App. 33–37, *with* FAR [48 C.F.R.] § 42.1204(i)[6] (providing a format for nova-

tion agreements when the transferor and transferee are corporate entities and all assets are transferred). The government's lack of a citation to authority probably reflects the fact that there is none. The natural reading of Paragraph (b)(6) of the novation is that the phrase "[a]ll payments and reimbursements previously made" and "all other previous actions taken" are the antecedents of *"those parts* of the Government's obligations." Pl.'s App. 35; FAR § 42.1204(i) (emphasis added). In other words, the provision refers only to payments and reimbursements previously made and to actions taken, not to potential claims.

In contrast to the above-quoted clause from FAR § 42.1204(i) used in the novation agreement, an example of a release extending to potential claims is found in FAR § 43.204(c)(2), which provides in pertinent part that "the Contractor hereby releases the Government from any and all liability under this contract for *further* equitable adjustments" (emphasis added).[7] Similar language appears in precedential decisions involving general releases. *See, e.g., Mingus Constructors*, 812 F.2d at 1389 ("the contractor hereby remises, releases, and forever discharges the United States, its officers, agents, and employees, of and from all manner of debts, dues, liabilities, obligations, accounts, claims, and demands whatsoever, in law and equity, under or by virtue of the said contract"); *Progressive Bros. Constr. Co. v. United States*, 16 Cl.Ct. 549, 550 (1989) ("the undersigned contractor hereby releases and discharges the United States of America of and from all liabilities, obligations and claims whatsoever under or arising out of said contract"). Unlike these provisions, the plain meaning of Paragraph (b)(6) of the novation agreement is limited to discharging the government from paying twice for the same service.

In short, the government is not entitled to a partial summary judgment that Paragraph

---

6. The Federal Acquisition Regulations are codified in title 48 of the Code of Federal Regulations ("C.F.R."). Citation to title 48 will be omitted in subsequent references to the FAR.

7. FAR § 43.204(c) applies to final equitable adjustments resulting from change orders. The FAR instructs contracting officers to include a *release provision in this circumstance* "[t]o avoid subsequent controversies that may [otherwise] result." *Id.*

(b)(6) of the novation agreement releases it from liability for all claims relating to pre-novation services.

### C. Whether the First Modification Precludes Cygnus's Claim

█ The government alternatively seeks a summary judgment that the plain meaning of the modification entered into on September 30, 1997 by Herner and OAM's contracting officer[8] amended the original contract by eliminating the database project and selecting particular pricing rates for the clearinghouse project. Def.'s Mot. at 9–12; Def.'s Reply at 2–7. Specifically, the government points to the following provisions in that modification:

1. The Publication/Database (Section II) of all option years is deleted (Pages B.5, B.7, B.9 & B.11.)

2. Option year one, listed at page B.4 is hereby exercised (for the Clearinghouse only).

3. The contract ceiling amount is increased by $971,913.56, from $1,389,496.54 to $2,361,410.10.

Pl.'s App. 41 (quoted in full, *supra,* at 153). In response, Cygnus explains that its "complaint is that if the Government was going to exercise an option at all, it had to do so for the entire contract, including both tasks, until such time as the Government properly terminated a particular requirement." Pl.'s Cross–Mot. at 25. Cygnus notes that it would be entitled to recover costs resulting from a termination for convenience. *Id.*

Cygnus is incorrect that the government was required to act by way of a termination, to the exclusion of other types of modifications. Under FAR § 43.103, entitled "Types of contract modifications," one of the four examples of a unilateral modification is the issuance of a termination notice. *See* FAR § 43.103(b). However, the FAR also sets out three types of bilateral modification. In the words of the FAR:

[b]ilateral modifications are used to—

(1) Make negotiated equitable adjustments resulting from the issuance of a change order;

(2) Definitize [*sic*] letter contracts; and

(3) *Reflect other agreements of the parties modifying the terms of contracts.*

FAR § 43.103(a) (emphasis added). The government avers that the modification signed by Herner and the contracting officer is a bilateral modification reflecting an "'agreement[ ] of the parties modifying the terms of [a] contract[ ].'" Def.'s Resp. to PF ¶ 41 (quoting FAR § 43.103(a)(3)). Cygnus does not directly controvert this description of the modification. Rather, Cygnus asserts that the court "should not permit" the government "to sidestep liability for a termination claim by masking its contract action behind a bilateral modification." Pl.'s Cross–Mot. at 25. However, Cygnus does not explain how the government "masked" anything, given that Herner signed the modification, nor does Cygnus establish that the government should be prohibited from acting pursuant to FAR § 43.103(a)(3) and be required instead to act pursuant to FAR § 43.103(b)(4) (termination notices) in these or any other circumstances. Cygnus contends that the modification was "patently unfair," Pl.'s Cross–Mot. at 26, but that argument ignores the context in which the modification was entered.

An equitable adjustment to a contract may be appropriate when the contracting officer takes action under the Changes or Termination clauses of the FAR. *See, e.g., VHC Inc. v. Peters,* 179 F.3d 1363, 1365–66 (Fed. Cir.1999) (discussing FAR § 52.249–2, "Termination for Convenience of the Government (Fixed–Price)"); *North Am. Constr. Corp. v. United States,* 56 Fed.Cl. 73, 78–79 (2003) (addressing FAR § 52.243–4, "Changes"). The FAR, however, does not grant authority to a contracting officer to make an equitable adjustment in instances where the government and the contractor execute a bilateral modification pursuant to FAR § 43.103(a)(3). Not surprisingly, Cygnus cites no authority

---

8. The modification was ratified by Cygnus pursuant to the novation agreement entered into by Cygnus, Herner, and OAM's contracting officer on October 15, 1998. *See* Pl.'s App. 34 (Paragraph (b)(3): "The transferee ratifies all previous actions taken by the Transferor with respect to the contracts, with the same force and effect as if the action had been taken by the Transferee.").

**157**

for its counter-intuitive proposition that the government should be required to make a contractor whole for changes to a contract agreed to by the contractor.

Instead, Cygnus argues that the modification did not modify the contract's price terms, asserting that "[t]he one page modification contains absolutely no reference to any price terms." Pl.'s Reply at 10. In Cygnus's view, the government "could have incorporated only part of [Herner's] proposal by specifying certain provisions and excluding others, but it did not." *Id.* Cygnus ignores the plain text of the modification, which expressly deleted certain provisions related to the publication database and specified a pricing schedule for the clearinghouse only for the first option year. *See supra*, at 153 (quoting Pl.'s App. 41). Among other things, the pages of the contract that were specified in conjunction with the exercise of the option for the first year set out the estimated hours and unit prices for eight categories of employees. Consequently, the text of the modification evidences the parties' agreement to amend the terms of their contract. In these circumstances, there is no basis in the record for finding that the bilateral modification effected a breach of the parties' contract.[9] In addition, there is no genuine dispute of material fact respecting interpretation of the contract at issue in this case, and the government is entitled to judgment as a matter of law that it is not liable to Cygnus under that contract. *See generally Record Steel and Constr., Inc. v. United States*, 62 Fed.Cl. 508, 518 (2004) ("Contract interpretation is a matter of law, and thus issues of contract interpretation can be readily susceptible of resolution via summary judgment.") (internal quotation marks and citations omitted).

---

9. For these same reasons, Cygnus is not entitled to a summary judgment on the alternative grounds of cardinal change and constructive termination for convenience. *See* Pl.'s Cross–Mot. at 13–15, 21–22. Also without merit is Cygnus's argument that the modification lacked consideration. *See* Pl.'s Reply at 7–8. Pursuant to the government's exercise of the first option year, the government agreed to pay for Herner's work on the clearinghouse project, and Herner agreed to provide that work, which agreement was inde-

## CONCLUSION

For the reasons stated, the government's motion for summary judgment is granted, and Cygnus's cross-motion for summary judgment is denied. The clerk shall enter judgment for defendant. No costs.

IT IS SO ORDERED.

pendent of the parties' mutual obligations under the base year of the contract. *See Abatement Contracting Corp. v. United States*, 58 Fed.Cl. 594, 609–10 (2003). Assuming *arguendo* that Cygnus is correct that the government "was incapable, without Cygnus, of complying with the [c]ongressional mandate" requiring implementation of the clearinghouse, Pl.'s Reply at 8, this observation does not disprove the existence of consideration for the modification.