OPINION AND ORDER

LETTOW, Judge.
The appellate stage of this case is sorely afflicted by filing and serving difficulties. These difficulties arose first with this court’s clerk’s office, then with plaintiff, and finally with defendant. The chronology of events is pertinent to the most recent matter pending before the court, namely, Defendant’s Motion For Reconsideration Of The Court’s Order Granting Plaintiffs Motion For An Extension Of Time To File A Notice Of Appeal. That motion is denied for the reasons set out below.
BACKGROUND
The court had issued an opinion and order on December 3, 2004 granting defendant’s motion for summary judgment on the merits of this contract dispute. See Cygnus Corp. v. United States, 63 Fed.Cl. 150 (2004). Twelve days later, on December 15, 2004, the clerk’s office rendered judgment pursuant to this opinion and order. Plaintiff then filed a Motion For Reconsideration on December 28, 2004. On January 5, 2005, the court signed and delivered to the clerk’s office an order denying Cygnus’s motion for reconsideration. Problems then arose.
The clerk’s office actually entered the order denying reconsideration on the docket on *645 January 10, 2005, five days after it had been delivered to that office. The delayed docketing of the order dated January 5, 2005 is contested by the government in its most recent motion, on the ground that the government was apparently served with a copy of the order on January 5, 2005, the date it was signed and five days before it was entered on the docket. The court gives credence to the government’s representation in this regard. Indeed, the government has attached to its pending motion for reconsideration a date-stamped copy of the order dated January 5, 2005. However, the court cannot ignore the docketing date shown on the clerk’s official record of proceedings that shows January 10, 2005 as the date of entry of that order. The government may have picked up the order from its “drop box” days before a copy of the order was mailed to counsel for plaintiff. Moreover, because the clerk’s office “now maintainfs] an automated docket sheet of all case activity,” 14 James Wm. Moore, Moore’s Federal Practice § 77.08[2], at 77-11 (3d ed.2004), Cygnus’s counsel had a reasonable basis to rely on the docketing date. Furthermore, such a delay is not without precedent, as is shown by the clerk’s office’s entry of judgment twelve days after the court’s order for judgment in December 2004.
The problems with dates were compounded in this case when on April 11, 2005, Cygnus filed a Notice Of Appeal To Court Of Appeals For The Federal Circuit And Motion For Extension Of Time To File Notice Of Appeal. That notice was out of time under Fed. R.App. P. 4(a)(1)(B), and thus the motion for an extension was necessary to perfect the appeal. Thereafter, the court awaited the government’s response to the motion. The response was not timely filed.
On May 19, 2005, the government filed Defendant’s Motion To File Defendant’s Opposition To Plaintiffs Motion For An Extension Of Time To File A Notice Of Appeal Nunc Pro Tunc. In that motion, counsel for the government represented that they had prepared the opposition on April 14, 2005 and had caused the opposition to be delivered for filing on that day, but the clerk’s office for unknown reasons did not receive and file the submission. Based upon the declaration of the government’s counsel, the court on May 24, 2005 granted the motion to file the opposition nunc pro tunc.
Also on May 24, 2005, the court issued an order granting Cygnus’s motion for an extension of time to file its notice of appeal. In that order, pursuant to Fed. R.App. P. 4(a)(5)(A), “[t]he time to file a notice of appeal in this case [wa]s extended, nunc pro tunc, until April 11, 2005, the date the notice of appeal was actually filed.” Order dated May 24, 2005. As grounds for that ruling, the court pointed to the disparity between the date the order of January 5, 2005 was signed and delivered to the clerk’s office and the date (January 10, 2005) on which the docket showed the order was actually entered.
Now, by the motion for reconsideration pending before the court, the government seeks to revisit the court’s determination of timeliness of Cygnus’s motion for an extension of time to appeal and to contest Cygnus’s showing of “excusable neglect or good cause” for an extension within the meaning of Fed. R.App. P. 4(a)(5)(A)(ii).
ANALYSIS[1]
The court had issued its order dated May 24, 2005 on the premise that the motion for an extension had been filed within 30 days after the time for taking an appeal under Fed. R.App. P. 4(a)(1)(B). Thus, the court applied Fed. R.App. P. 4(a)(5)(A)(i) (“if ... a *646 party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires”) and Fed. R.App. P. 4(a)(5)(A)(ii) (“if ... regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause”).[2] Notably, Fed. R.App. P. 4(a)(5)(A)(ii) was amended in 2002 to clarify that “a motion for an extension filed during the 30 days following the expiration of the original deadline may be granted if the mov-ant shows either excusable neglect or good cause.” Fed. R.App. P. 4 advisory committee note (2002 Amendments, Changes Made After Publication and Comments). In addition, in 2002 the revisors emphasized that “[t]he excusable neglect standard applies in situations in which there is fault.” Id.
In its initial motion for an extension filed with its notice of appeal on April 11, 2005, Cygnus had made a rudimentary but plausible showing of excusable neglect, particularly in light of the confusing circumstances surrounding entry of the court’s order of January 5, 2005 denying reconsideration. The government’s response in opposition filed by leave on May 24, 2005 (and served on May 19, 2005) contested principally the timing of Cygnus’s filing, and secondarily the showing of excusable neglect. The government’s motion for reconsideration extends and elaborates on the ground for opposition previously asserted regarding excusable neglect.
The court adheres to the standard for “excusable neglect” explicated by the Supreme Court in Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court in Pioneer addressed the usage of this two-word standard in the context of Fed. R. Bankr.P. 9006(b)(1), and it parsed the meaning of the two words separately. As to “neglect,” the Supreme Court explained that the word should be given a straightforward meaning:
The ordinary meaning of “neglect” is “to give little attention or respect” to a matter, or, closer to the point for our purposes, “to leave undone or unattended to especially] through carelessness.” Webster’s Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.
Pioneer, 507 U.S. at 388, 113 S.Ct. 1489 (emphasis in original). Thus “neglect” in its natural usage implies, among other things, carelessness.
The Supreme Court in Pioneer then turned to the requirement of Fed. R. Bankr.P. 9006(b)(1) that the “neglect” be “excusable.” In that regard, it held “that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party’s omission.” Pioneer, 507 U.S. at 395, 113 S.Ct. 1489. The considerations to be addressed included “the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the mov-ant acted in good faith.” Id. The Supreme Court held that a client was accountable for the actions of its counsel just as it was for its own actions, and therefore, that “the proper focus is upon whether the neglect of respondents and their counsel was excusable.” Id. at 397, 113 S.Ct. 1489 (emphasis in original).
The government latches onto the circumstance that the error in this instance was attributable to Cygnus’s counsel. Motion for Reconsideration at 6. It argues that the standard “is a strict one,” the application of which “has been limited to ‘unique and extraordinary circumstances.’ ” Id. at 4 (quoting Diliberti v. United States, 4 Cl.Ct. 505, 506 (1984), and United States v. Ferrer, 613 F.2d 1188, 1190-91 (1st Cir.1980), and citing Quintin v. United States, 746 F.2d 1452, 1453-54 (Fed.Cir.1984)). It then links counsel’s error with the strictness of the standard by contending that “it is well-established in this [cjourt that [a] ‘mistake of counsel is not, as a general rule, recognized as excusable neglect.’” Motion for Reconsideration at 4 *647 (quoting Diliberti, 4 Cl.Ct. at 506, and citing Cleek Aviation v. United States, 20 Cl.Ct. 766, 768-69 (1990), and Prestex, Inc. v. United States, 4 Cl.Ct. 14,17 (1988)).
The government errs in relying heavily on decisions such as Quintín, Ferrer, Cleek Aviation, Diliberti, and Prestex that antedate both the Supreme Court’s decision in Pioneer and the 2002 Amendments to Fed. R.App. P. 4(a)(5)(A). Because of Pioneer and the 2002 Amendments to Fed. R.App. P. 4(a)(5)(A), the earlier decisions in Quintín, Cleek Aviation, Diliberti, and Prestex have been superseded and do not now reflect the standard applicable to a motion filed with this court to extend the time for filing a notice of appeal. As a result, the government is wrong both in its draconian characterization of the standard and in its reliance on Cygnus’s counsel’s error as a basis for penalizing Cygnus more severely than if the error had been attributable to Cygnus rather than its counsel.
Pioneer established a “relatively flexible” equitable standard for extensions under Fed. R. App. P. 4(a)(5), as courts of appeals have since recognized. Gibbons v. United States, 317 F.3d 852, 855 (8th Cir.2003); see also Stutson v. United States, 516 U.S. 193, 116 S. Ct. 600, 133 L.Ed.2d 571 (1996) (holding that the Pioneer standard applies to Fed. R.App. P. 4(b)); Pettle v. Bickham, 410 F.3d 189 (5th Cir.2005) (applying the Pioneer standard). Although the post-Pioneer standard is not so strict as the government would have it, “ ‘there still must be a satisfactory explanation for the late filing.’” Gibbons, 317 F.3d at 855 (quoting Graphic Communications Int’l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir.2001)).
In this instance, Cygnus’s counsel acknowledged that it made a mistake: “Counsel excusably neglected to file the notice in this case ... as a result of a transcription error which incorrectly recorded the date of the order denying the motion for reconsideration,” which “error did not come to counsel’s attention until preparing this notice of appeal.” PL’s Notice Of Appeal ... And Motion For Extension Of Time In Which To File Notice Of Appeal at 1-2. The government argues that Cygnus has neither disclosed who made the error nor explained whether the mistake was within Cygnus’s counsel’s reasonable control. Motion for Reconsideration at 6. These criticisms are well taken, but they largely miss the point of the court’s prior grant of the requested extension. The delay by the clerk’s office in docketing the order of January 5, 2005 would itself have introduced an element of confusion in the computation of time for taking an appeal. Manifestly, counsel for Cygnus should have taken note of this disparity and have sought to resolve it before the time for filing an appeal expired, but the confusing circumstance nonetheless was present. In short, as in Pioneer, this was an instance “outside the ordinary course.” Pioneer, 507 U.S. at 398,113 S.Ct. 1489.
Moreover, also as in Pioneer, there is no evidence of prejudice to the government. It makes no contention that having to defend the court’s judgment on appeal a month later than it otherwise would have had to do creates an undue burden. Similarly, there does not appear to be any threat to judicial administration. The mistakes about time made in this ease appear to be spread relatively evenly among the participants. Finally, there is no suggestion that any of the several mistakes, including that made by Cygnus’s counsel, was culpable in the sense of having been made in bad faith. Thus, equity suggests that there is excusable neglect in this ease and that the appeal should proceed on the merits without the encumbrance of a question of timeliness. The court applied those balancing considerations in its prior rulings, two of which were made nunc pro tunc, and it sees no reason now for a change in result.
In short, the court adheres to its grant of an extension of time to Cygnus to file a notice of appeal, acting under the criteria of Fed. R.App. P. 4(a)(5)(A). The government’s motion for reconsideration is DENIED.
It is so ORDERED.

. The court may grant a motion for reconsideration pursuant to Rule 59 of the Rules of the Court of Federal Claims ("RCFC”), based on the movant’s demonstration "either that: (a) an intervening change in the controlling law has occurred, (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice.” Bannum, Inc. v. United States, 59 Fed.Cl. 241, 243 (2003) (citations omitted). In particular, "the movant must point to a manifest error of law or mistake of fact” and must do more than "merely reassert!] arguments which were previously made and were carefully considered by the court.” Id. (citation omitted). The government has not cited Rule 59 in its Motion For Reconsideration, but rather has instead relied upon RCFC 1 (the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action”).

. Fed. R.App. P. 4(a)(5) provides that "[t]he district court may extend the time to file a notice of appeal” in the quoted circumstances. For this purpose, the term "district court” includes this court. See Fed. Cir. R. 1(a)(1)(C).