Rafael Diaz COLON, Plaintiff,

v.

**UNITED STATES, Defendant.**

No. 04–1720C.

United States Court of Federal Claims.

May 24, 2006.

Leticia Davila Cruz, Fajardo, Puerto Rico.

Nancy M. Kim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, and Todd M. Hughes, Assistant Director, Commercial Litigation Branch. Of counsel were Lieutenant Colonel Vanessa Berry and Captain Rebecca Ausprung, Military Personnel Branch, United States Army Litigation Division, Department of the Army, Arlington, VA.

### OPINION AND ORDER

LETTOW, Judge.

In this military disability case, the plaintiff, Rafael Diaz Colon, a former member of the U.S. Army, put forward a claim with respect to his discharge from the Army in 1975. Mr.

Colon served in the Army or the U.S. Army Reserve on three different occasions. This case focuses on his second period of service, which occurred from 1974 to 1975, and respecting which he was discharged under other than honorable conditions in lieu of court-martial for being absent without leave during his enlistment. In 1989, the Army Discharge Review Board ("ADRB") revised the terms of this discharge to under honorable conditions based upon evidence that he suffered from a mental condition at the time of his discharge in 1975. Thereafter, Mr. Colon sought relief from the Army Board for Correction of Military Records ("ABCMR" or "Correction Board"), requesting that he be placed on the Temporary Disability Retired List effective on the date of his discharge in 1975, and be found permanently disabled. The Correction Board denied relief, and Mr. Colon brought his claim before this court. Mr. Colon averred that the Army violated its own procedures when he was discharged in 1975, that he was disabled at the time of his discharge in 1975, and that he is entitled to disability retirement benefits based upon the findings of the Army Discharge Review Board.

The government has filed a motion to dismiss, or in the alternative, motion for judgment upon the administrative record, and Mr. Colon submitted a corresponding cross-motion for judgment upon the administrative record. The government contends that Mr. Colon's claim is barred by the statute of limitations, or, in the alternative, by the doctrines of laches and equitable estoppel. In addition, the government argues that if the court does possess jurisdiction to decide the merits of Mr. Colon's claim, he should be barred from relief because he would have been ineligible for disability retirement benefits in 1975. First, he allegedly fraudulently enlisted in the Army in 1974 by failing to disclose at the time of his enlistment his prior treatment for a mental condition. Second, his discharge in 1975 occurred under other than honorable conditions.

Mr. Colon filed this action *pro se* and proceeded on that basis until his death on June 30, 2005. As a result of proceedings under Rule 25 of the Rules of the Court of Federal Claims ("RCFC") concerning substitution of a party upon death, on January 6, 2006, Leticia Davila Cruz, acting at the request of Mr. Colon's heirs, moved to substitute herself as counsel of record for Mr. Colon in the case, which motion the court granted. Order of Feb. 1, 2006. Thereafter, on February 21, 2006, Ms. Cruz filed a motion to substitute Rafael Diaz Acevedo as plaintiff in this case.

A hearing was held on February 9, 2006. During the hearing, the court requested that the parties address by additional briefing the effect on this case, if any, of Mr. Colon's enlistment in the Army Reserve in 1977, and his subsequent honorable discharge from the Reserve in 1980. *See* Hr'g Tr. 66:4–9 (Feb. 9, 2006).[1] The government filed its supplemental brief on March 2, 2006, and plaintiff filed a response on March 21, 2006.[2]

For the reasons set forth below, the government's motion to dismiss is denied, Mr. Colon's cross-motion for judgment upon the administrative record is denied, and the government's motion for judgment upon the administrative record is granted.

## BACKGROUND

Mr. Colon first enlisted in the U.S. Army on April 15, 1969. AR 1 (Report of Transport or Discharge (Nov. 4, 1970)). Upon enlisting in the Army, Mr. Colon underwent a medical examination, Compl. ¶ 10, where he

---

1. "Hr'g Tr." refers to the transcript of the hearing conducted in this matter on February 9, 2006. "AR" refers to the Administrative Record filed with the court by the Department of the Army.

2. Both the government and Mr. Colon refer to two claims in this case: a wrongful military discharge claim and a disability retirement claim. Pl.'s Cross–Mot. at 9–12; Def.'s Mot. at 9–12. In reviewing Mr. Colon's complaint, and in light of his *pro se* status at the time of filing,

*see Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995); *Goel v. United States,* 62 Fed.Cl. 804, 806 (2004), the court concludes that Mr. Colon only asserts a disability retirement claim. References to procedural irregularities in the processing of his discharge in 1975 appear to concern the absence of any determination of disability. *See* Compl. ¶¶ 4–7 (seeking benefits attendant to disability retirement but making no other monetary claims).

stated on a questionnaire that he had "been a patient (*committed or voluntary*) in a mental hospital or san[a]torium." AR 23 (Report of Medical History (Oct. 9, 1969)) (emphasis in original). Although Mr. Colon was directed by the questionnaire's instructions to provide details of such an affirmative response, he failed to do so. *Id.* After serving in Vietnam with Company B of the 34th Engineering Battalion, he was honorably discharged,[3] "not by reason of physical disability," on November 4, 1970 as a Specialist 4th Class and transferred to the U.S. Army Reserve. AR 48 (Special Orders No. 308 (Nov. 4, 1970)).[4]

Upon his return to civilian life, Mr. Colon "was unable to readjust to his pre-service living patterns." Compl. ¶ 18. Mr. Colon enrolled in the Miguel Such Vocational School in Puerto Rico for six months but ultimately left prior to completing his studies. Compl. ¶ 19. Thereafter, Mr. Colon engaged in "sporadic employment . . . and was usually fired for repeated absenteeism." Compl. ¶ 20.

On November 18, 1971, Mr. Colon sought treatment at a Veterans Administration Medical Center in Puerto Rico and was referred to its Department of Mental Health. Compl. ¶ 21; AR 386–95 (Registration Form (Nov. 18, 1971)). At that time, Mr. Colon complained about his inability to sleep and nervousness since returning from Vietnam. AR 393. Mr. Colon was diagnosed as suffering from an anxiety reaction, received a prescription for medication, and was encouraged to attend a therapy group for veterans. AR 394. He returned for further treatment during 1971. AR 395 (Progress Notes (1971)).

On July 29, 1974, Mr. Colon was honorably discharged from the Army Reserve, AR 63 (Orders No. 08–1286623 (Aug. 20, 1974)), such that he could reenlist in the Army on the following day. AR 68 (Enlistment Contract (July 30, 1974)). After reenlisting, Mr. Colon was assigned to the 2nd Armored Division at Fort Hood, Texas as a Private Second Class. *Id.* In connection with his mandatory medical examination, Mr. Colon was again asked to complete a medical history questionnaire. AR 74–75 (Report of Medical History (July 29, 1974)). Unlike his responses to the same questionnaire in 1969, however, for his enlistment in 1974 Mr. Colon represented that he suffered from no medical ailments and had never been treated for a mental condition. *Id.*

Starting on September 9, 1974, Mr. Colon was absent without leave ("AWOL") for six days. AR 133 (Record of Proceedings Under Article 15, UCMJ (Sept. 19, 1974)). Mr. Colon accepted a non-judicial punishment in lieu of court-martial and was thereafter reduced in grade, forfeited a portion of his pay, and was assigned fourteen days of extra duty. *Id.*[5]

Beginning on July 22, 1975, Mr. Colon again was AWOL, AR 95 (AWOL—Deserter Verification Sheet (Oct. 29, 1975)), until he surrendered himself at Cutler Army Hospital, Fort Devens, Massachusetts on October 29, 1975. *Id.;* AR 115 (Notice of Return of U.S. Army Member from Unauthorized Ab-

---

3. A soldier's discharge may take one of five forms. An "honorable discharge . . . is appropriate when the quality of the solider's service generally has met the standards of acceptable conduct and performance of duty for Army personnel or is otherwise so meritorious that any other characterization would be clearly inappropriate." Army Regulation 635–200 § 3–7.a. A "general discharge is a separation from the Army under honorable conditions . . . [and] is issued to a soldier whose military record is satisfactory but not sufficiently meritorious to warrant an honorable discharge." *Id.* § 3–7.b. "A discharge under other than honorable conditions . . . may be issued for misconduct, fraudulent entry, homosexual conduct, security reasons, or in lieu of trial by court-martial." *Id.* § 3–7.c. Finally, a "bad conduct discharge" will only be assigned pursuant to "an approved sentence of a general or special court-martial," *id.* § 3–11, and a "dishonorable discharge" will only be assigned to a soldier pursuant to "an approved sentence of a general court-martial." *Id.* § 3–10.

4. During his service, Mr. Colon was awarded the National Defense Service Medal, Vietnam Service Medal, Vietnam Campaign Medal, and Civic Action Honor Medal. AR 1. He also received a letter of commendation and a letter of appreciation from his commanders. Compl. ¶ 12.

5. "Article 15 nonjudicial punishment . . . is the least formalized method of discipline [in the military], conducted personally by the accused's commanding officer." *Dumas v. United States,* 223 Ct.Cl. 465, 620 F.2d 247, 251 (1980); *see* 10 U.S.C. § 815.

sence (Nov. 17, 1975)). Mr. Colon informed the Army that stress from his marriage, primarily because his wife lived in Puerto Rico, caused him to be AWOL. AR 100 (Personnel Control Facility Interview Sheet (Oct. 31, 1975)).[6]

On October 31, 1975, Mr. Colon voluntarily requested that he be discharged from the Army, in lieu of court-martial, "for the good of the service under the provisions of Chapter 10, A[rmy] R[egulation] 635–200." AR 91–92 (Mem. from Colon to Commander, U.S. Army Training Center and Fort Dix (Oct. 31, 1975)).[7] Mr. Colon acknowledged that he had been afforded the opportunity to consult with counsel, that he might "be discharged under other than honorable conditions," and that he had been advised of the consequences of such a discharge. *Id.* Mr. Colon underwent a medical examination, pursuant to Army Regulation 635–200 § 10–6, and was found to be qualified for separation. AR 85–86 (Report of Medical Examination (Oct. 31, 1975)). On his medical history questionnaire for that examination, Mr. Colon stated that he suffered from nearly a dozen ailments that included frequent trouble sleeping, depression or excessive worry, and frequent or severe headaches, and that he had previously been treated for a mental condition. AR 87–88 (Report of Medical History (Oct. 31, 1975)). Thereafter, Mr. Colon's request for a discharge from the Army under other than honorable conditions was approved, AR 89 (Major General William A. Patch to Commander, U.S. Army Personnel Control Facility (Nov. 12, 1975)), and became effective on November 25, 1975. AR 62 (Re-

port of Separation from Active Duty (Nov. 25, 1975)).[8]

Mr. Colon had yet a third tenure with the Army. On December 2, 1977, he enlisted in the Army Reserve as a Private First Class. AR 169–71 (Enlistment or Reenlistment Agreement (Dec. 2, 1977)). On his application, Mr. Colon responded that he had not previously been a patient "in any institution primarily devoted to the treatment of mental, nervous, emotional, psychological, or personality disorders." AR 178–82 (Application for Enlistment (Dec. 2, 1977)). In connection with his medical examination upon this enlistment, Mr. Colon stated that he neither took any medications nor suffered from any medical conditions except for sleepwalking. AR 151–52 (Report of Medical History (Dec. 2, 1977)). Mr. Colon also indicated on the medical history questionnaire that he had not previously been treated for a mental condition. *Id.* The reviewing officer found Mr. Colon medically qualified for enlistment. AR 154 (Report of Medical Examination (Dec. 2, 1977)).

Notably, Mr. Colon stated on his enlistment agreement in 1977 that he had previously served in the U.S. Army from 1969 to 1970, but he neglected to include his service from 1974 to 1975 and subsequent discharge under other than honorable conditions. AR 172 (DD Form 1966). The Army discovered this information upon a review of its own records, AR 168 (Letter from Major David L. Edwards, Acting Director, Records Management to Commander, First U.S. Army (Mar. 24, 1978)); AR 161 (Letter from Major Linden E. Schuyler, Chief, Delayed Officers

---

**6.** Mr. Colon married in 1972 and he and his wife had children before they divorced five years later. Compl. ¶ 26.

**7.** During the time that Mr. Colon was AWOL, Army Regulation 635–200 stated that "[a]n individual who has committed an offense or offenses, the punishment for which, under the Uniform Code of Military Justice . . . includes a bad conduct or dishonorable discharge, may submit a request for discharge for the good of the Service." Army Regulation 635–200 § 10–1.a (1973).

**8.** In recommending that Mr. Colon be discharged for the good of the service, his company commander neglected to inform the commander

of the U.S. Army Personnel Control Facility at Fort Dix that Mr. Colon had prior military service from which he had been honorably discharged and that he had served overseas and received four medals during the prior service (only one of the four medals, the National Defense Service Medal, was cited). AR 93 (Captain John H. Johnson to Commander, U.S. Army Personnel Control Facility (Oct. 31, 1975)); *see* Plaintiff's Objection to Defendant's Motion to Dismiss and Motion for Judgment Upon the Administrative Record ("Def.'s Cross–Mot.") at 3. This error, however, was not carried over to Mr. Colon's subsequent Report of Separation; both his prior service and medals are listed in that Report. AR 62.

Branch to Commander, First U.S. Army (May 5, 1978)), and began an investigation to determine whether Mr. Colon should be discharged from the U.S. Army Reserve for fraudulent enlistment. AR 163 (Mem. from Major Robert M. Ashley to Commander, 166th Support Group (June 13, 1978)); see AR 165 (Mem. from Pedro Colon Osorio, Military Personnel Officer, for Captain Cesar A. Vazquez (Jan. 19, 1979)) (appointing Captain Vazquez as the investigating officer). Captain Vazquez found that Mr. Colon fraudulently entered the Army Reserve after failing to inform the Reserve of his previous discharge in 1975, and recommended that Mr. Colon be discharged. AR 166–67 (Captain Vazquez to Commander, 166th Support Group (Mar. 1, 1979)). Mr. Colon was granted an honorable discharge from the Army Reserve effective December 1, 1980. AR 146 (Orders No. 11–1075956 (Nov. 26, 1980)).

In early 1983, Mr. Colon sought outpatient psychiatric treatment "which produced a clinical impression of" post-traumatic stress disorder ("PTSD"). *In the Appeal of Rafael Diaz Colon*, No. 91–21 113 (Bd.Vet.App. Aug. 4, 1994); AR 459.[9] Thereafter, Mr. Colon was admitted to the Boston Veterans Administration Medical Center ("VAMC") for a month in April 1983 for psychiatric problems and was diagnosed with bipolar disorder. AR 274 (Hospital Summary (May 3, 1983)). He received medication, was observed extensively, and was referred for out-patient treatment. *Id.* In May 1983, Mr. Colon began treatment at the Boston VAMC in a Lithium Group and attended weekly sessions for at least three years. AR 402 (Letter from Dr. Charles D. Johnson to Mr. Richard Kimball, Vietnam Vets of America (Nov. 13, 1986)). During an examination in 1983, Mr. Colon was diagnosed with schizophrenic disorder, schizo-affective type. *In the Appeal of Rafael Diaz Colon*, No. 91–21 113; AR 459. From January 23 to February 13, 1985, Mr. Colon was admitted a second time to the Boston VAMC, AR 275–77 (Discharge Summary (Feb. 15, 1985)), during which time Mr. Colon was diagnosed as suffering from alcohol abuse in addition to chronic, delayed PTSD and bipolar disorder. *Id.*

On March 24, 1987, Mr. Colon sought a review by the Army Discharge Review Board of his discharge in 1975 under other than honorable conditions. AR 223–24 (Application for Review of Discharge or Dismissal from the Armed Forces of the United States (Mar. 24, 1987)).[10] Mr. Colon asserted that he suffered from PTSD, that this illness caused his absence without leave in 1975, and that the process by which he was discharged was improper and unfair. AR 195 (Army Council of Review Boards Case Report & Directive (Jan. 11, 1988)). Mr. Colon's request was denied. AR 192–200 (Army Council of Review Boards Case Report & Directive (Jan. 11, 1988)).

Mr. Colon sought a second review of the nature of his discharge from the ADRB. AR 221–22 (Application for Review of Discharge or Dismissal from the Armed Forces of the United States (Mar. 29, 1988)). For this second review, Mr. Colon requested and was granted a personal appearance before the board. AR 210–11 (Letter from Patrick S. Guarnieri to Phyllis A. Carrington (Mar. 15, 1989)), 216–17 (Letter from Carrington to Colon (Sept. 1, 1989)), 218–20 (Application for Review of Discharge or Dismissal from the Armed Forces of the United States (Oct. 5, 1989)). Mr. Colon again asserted that he suffered from PTSD, which caused his absence without leave in 1975, and that the manner in which he was discharged in 1975 was flawed. AR 299 (Statement of Material Contentions). As part of the materials Mr. Colon submitted to the ADRB for their second review, Mr. Colon included an affidavit from Dr. John P. Wilson, a professor of psychology at Cleveland State University who had written extensively on PTSD. AR 280–97 (Dr. Wilson's affidavit).

The ADRB granted partial relief to Mr. Colon in connection with his second applica-

---

9. "PTSD," an anxiety disorder, was not recognized as a psychiatric disorder until 1980 upon the publication of the "Diagnostic and Statistical Manual of Mental Disorders." AR 425 (ABCMR Memorandum of Consideration (Dec. 3, 1998)).

10. The ADRB is charged with reviewing "the discharge or dismissal ... of any former member of [the Army] ... upon its own motion or upon the request of the former member." 10 U.S.C. § 1553(a); see 32 C.F.R. § 581.2.

tion. AR 410-20 (Army Council of Review Boards Case Report & Directive (Nov. 8, 1989)). The ADRB found that Mr. Colon's PTSD "was of sufficient severity as to warrant partial relief in the form of a general discharge ... [but] that [Mr. Colon's] reason for discharge was both proper and equitable." AR 417. Consequently, the ADRB concluded that the classification of Mr. Colon's discharge in 1975 should be changed from under other than honorable conditions to under honorable conditions. AR 419. The board was unwilling to assign Mr. Colon an honorable discharge because his two periods of AWOL and service time of twelve months and thirteen days, on a three-year enlistment, "reduced the quality of [Mr. Colon's] service below that meriting a fully honorable discharge." *Id.*

Mr. Colon subsequently continued to receive treatment for his mental conditions at a number of VAMCs in Massachusetts. Compl. ¶¶ 54-56 (averring that he was admitted to the Jamaica Plain VAMC in 1988, 1996, and 1998, and to the Northampton VAMC on four additional occasions from 1992 to 1993). On April 1, 1990, Mr. Colon filed a claim for veterans benefits with the VA Regional Office in Boston, Compl. ¶ 60, that was rejected the following month. *In the Appeal of Rafael Diaz Colon*, No. 91-21 113; AR 458.[11] The Board of Veterans' Appeals reopened the claim in October 1991 and remanded the case to the Regional Office. *Id.* The Regional Office returned the case to the Board of Veterans' Appeals after denying Mr. Colon a service-connected disability rating for PTSD in May 1992 and January 1994. *Id.* On review, the Board of Veterans' Appeals found that "service connection for PTSD [wa]s warranted" based on Mr. Colon's service in Vietnam from 1969 to 1970. *In the Appeal of Rafael Diaz Colon*, No. 91-21 113 (Aug. 4, 1994); AR 458-64. Mr. Colon thereafter received compensation at a service connected disability rate of 50% for PTSD. Compl. ¶ 60; Defendant's Motion to Dismiss or, in the alternative, Motion for Judgment Upon the Administrative Record ("Def.'s Mot.") at 5. This rating was increased to 70% effective September 26, 2002, Pl.'s Cross-Mot. App. at 1-3 (VA Rating Decision (Nov. 20, 2002)), and further increased to 100% on October 5, 2004. Compl. ¶ 61.

Subsequent to the actions of the ADRB and the Department of Veterans Affairs, Mr. Colon submitted an application with the Army Board for Correction of Military Records. AR 429-30 (Letter from Guarnieri to USARPERCEN (Nov. 20, 1996)), 454 (Application for Correction of Military Record (Jan. 18, 1989) (annotated to "count as 13 Nov '96 application")).[12] On December 3, 1998, the ABCMR unanimously rejected Mr. Colon's application, AR 423-27 (Memorandum of Consideration (Dec. 3, 1998)), concluding that Mr. Colon fraudulently enlisted in 1974 when he concealed his prior treatment for a mental condition. AR 426. The Board held that it could "not condone such misconduct by granting [Mr. Colon] a medical retirement for the same disqualifying information he concealed." *Id.* On alternative grounds, the ABCMR denied Mr. Colon's application because the Board determined that he would have been ineligible for disability retirement processing in 1975 "due to the fact that he was being processed for a separation which resulted in an under other than honorable discharge." *Id.* The ABCMR did not address Mr. Colon's disability contentions on the merits. AR 426-27.

Mr. Colon filed his complaint in this court on November 30, 2004. On July 11, 2005, the court received informal notice that Mr. Colon had died on June 30, 2005. Order of July 21, 2005. Pending before the court is a motion to substitute Mr. Colon's son, Rafael Diaz Acevedo, as the plaintiff in this matter.

## STANDARDS FOR DECISION

The jurisdiction of the court must be established at the outset before the court may proceed to the merits of any action. *Steel*

---

11. The decision by Board of Veterans' Appeals states that it previously had denied a claim for PTSD by Mr. Colon.

12. The Secretary of the Army may correct any Army record, acting through the ABCMR, "when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); *see* 32 C.F.R. § 581.3.

*Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). As a general matter, "[a]ll federal courts are courts of limited jurisdiction." *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998). This court's subject matter jurisdiction is, among other things, "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *Id.* This waiver "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). "The 6–year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir.1988). Mr. Colon, as the plaintiff, bears the burden of proving that this court has subject matter jurisdiction over his complaint. *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

This court has a statutorily circumscribed role in military cases. *Metz v. United States,* 61 Fed.Cl. 154, 165 (2004), *appeal filed,* No. 05–5158 (Fed.Cir. Aug. 11, 2005). "It has long been established that it is 'beyond the institutional competence of courts to review' the substance of decisions that have been left exclusively to the discretion of the military." *Roth v. United States,* 56 Fed.Cl. 239, 244 (2003) (quoting *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002)), *rev'd in part on other grounds,* 378 F.3d 1371 (Fed.Cir. 2004); *see Groves v. United States,* 47 F.3d 1140, 1144 (Fed.Cir.1995). "It is equally settled ... that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). In reviewing the disposition by the ABCMR of Mr. Colon's claims, the court's task is to determine whether the decision by the ABCMR was " 'arbitrary, capricious, unsupported by substantial evidence, or contrary to law.' " *Anderson v. United States,* 59 Fed.Cl. 451, 455 (2004) (quoting *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998)), *appeal dismissed,* 108 Fed. Appx. 630 (Fed.Cir.2004); *see Heisig,* 719 F.2d at 1156.

## ANALYSIS

### A. RCFC 25

"If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party." RCFC 25(a)(1). Such a motion should be made "not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death." *Id.* In the present action, the plaintiff, Mr. Colon, died on June 30, 2005. Counsel was retained and was substituted for Mr. Colon, who had been proceeding *pro se.* In due course, counsel filed a motion to substitute Rafael Diaz Acevedo as plaintiff. The court acknowledged receipt of the motion and sought clarification of Mr. Acevedo's relationship to Mr. Colon. Order of Feb. 24, 2006. On March 3, 2006, the government moved to deny the motion to substitute Mr. Acevedo as plaintiff in this action, and consequently to dismiss the matter pursuant to RCFC 25(a)(1), on the ground that Mr. Acevedo did not appear to be a proper representative of Mr. Colon's estate. On March 27, 2006, counsel for Mr. Colon responded and stated that Mr. Acevedo is a son of Mr. Colon. Counsel attached to her response a Declaration of Heirship from the Court of First Instance in the Commonwealth of Puerto Rico, listing four individuals as the children of Mr. Colon, one of whom was Rafael Diaz Acevedo, the individual named in plaintiff's motion for substitution of plaintiff. The Court of First Instance declared that these four children of Mr. Colon are his heirs under the laws of Puerto Rico.

In light of the Puerto Rico Court of First Instance's Declaration of Heirship, the objections of the government are unavailing, and the court grants the motion for substitution of Rafael Diaz Acevedo as plaintiff in the

place and stead of Rafael Diaz Colon, deceased.

### B. Statute of Limitations

■ "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. In a suit under the Tucker Act, a cause of action "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir. 2003) (quoting *Nager Elec. Co. v. United States*, 177 Ct.Cl. 234, 368 F.2d 847, 851 (1966)). Claims asserting entitlement to disability retirement pay "generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed.Cir.2005). The long-standing rationale for this rule posits that Congress "entrusted" military administrative boards with the determination of whether a soldier should be retired for disability and, consequently, the statute of limitations for this court could not begin to accrue until such a board acted or chose not to act. *Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381, 389 (1962); *see Chambers*, 417 F.3d at 1224–25; *Furlong v. United States*, 138 Ct.Cl. 843, 152 F.Supp. 238, 240–41 (1957).

On December 3, 1998, the ABCMR unanimously rejected Mr. Colon's application to correct his military records to provide that he should have been retired due to a disability in 1975. AR 423–27 (Memorandum of Consideration). The ABCMR was the first military board authorized to determine Mr. Colon's entitlement to disability retirement benefits. *See Chambers*, 417 F.3d at 1224.[13] Mr. Colon filed his complaint in this court on November 30, 2004, less than six years from December 3, 1998, the time that the statute of limitations began to accrue under the general rule for timeliness of such claims confirmed in *Chambers*. *See id.*

■ An exception to the general rule for accrual of military disability retirement claims arises when a soldier's "knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the [Army's] finding of fitness by failing to demand a [physical evaluation] board prior to his discharge." *Real v. United States*, 906 F.2d 1557, 1562 (Fed.Cir. 1990); *see Van Allen v. United States*, 70 Fed.Cl. 57, 62–63 (2006). The court of appeals affirmed this exception in *Chambers* and stated that a soldier's failure to seek a board determination with respect to his alleged disability could trigger "the statute of limitations when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge." 417 F.3d at 1226 (citing *Real*, 906 F.2d at 1562). The facts outlined in the *Real* decision effectively circumscribe this exception to the general rule for applicability of the statute of limitations. The court of appeals in *Chambers* refused an invitation to extend the exception and commence the accrual of the statute of limitations whenever a soldier, whether before or after discharge, "learns of his disabling condition." 417 F.3d at 1226. ("Simply put, after discharge, a veteran has nothing to waive."). Therefore, the inquiry with respect to the *Real* exception is limited to the soldier's knowledge at the time of his discharge. *Real*, 906 F.2d at 1562.

■ When Mr. Colon was discharged under other than honorable conditions in 1975, Mr. Colon "neither requested nor [was] offered consideration by a disability board prior to discharge" with respect to whether he

---

**13.** The ADRB was the first military administrative body to consider an application by Mr. Colon. However, the power of the ADRB is limited to reviewing a soldier's discharge or dismissal. *See* 10 U.S.C. § 1553(a). The ABCMR, on the other hand, may correct any aspect of a soldier's military record, including his or her entitlement to disability retirement benefits. *See* 10 U.S.C. § 1552. Consequently, the ABCMR, and not the ADRB, is statutorily authorized to determine whether Mr. Colon is entitled to disability retirement benefits. *Compare* 10 U.S.C. § 1553, *with* 10 U.S.C. § 1552.

was eligible to be retired for disability. *See Chambers,* 417 F.3d at 1226. The government asserts, however, that the *Real* exception should be applied, and thus the statute of limitations on Mr. Colon's claim should have begun to accrue on the day of his discharge in 1975, because Mr. Colon was sufficiently aware of his mental disability at that time. Def.'s Mot. at 11–12. Thus, the government contends that Mr. Colon's failure to request a disability retiring board when he was discharged in 1975 was a waiver of his right to review of his fitness to serve. *Id.*

The appropriate inquiry under both *Real* and *Chambers* "is whether at the time of his separation from the Army in [1975, Mr. Colon] knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected." *Chambers,* 417 F.3d at 1226. The court concludes that there is insufficient evidence in the administrative record to indicate that Mr. Colon possessed such knowledge. While the administrative record does include evidence that after his discharge in 1975, and especially after his discharge in 1980, Mr. Colon's mental condition significantly deteriorated, *see supra,* at 477–78, salient events or facts prior to 1975 that would have provided Mr. Colon with sufficient knowledge that he was suffering from some form of PTSD are largely absent. That Mr. Colon had been mentally ill at times before 1975 is shown by his responses to the Army's medical history questionnaires in 1969 and 1975, the treatment he received in 1971, and the general description of his condition provided by Dr. Wilson in the affidavit executed in 1989 to support reclassification of Mr. Colon's discharge. *See supra,* at 475–79. Before being discharged in 1975, Mr. Colon undoubtedly was aware that he had trouble sleeping and suffered from anxiety. There is no evidence, however, that Mr. Colon knew that his mental condition was so severely disabling that it would have qualified him for disability retirement in 1975. *See Van Allen,* 70 Fed.Cl. at 63.

Moreover, at no time did the Army itself ever give any indication that it believed Mr. Colon suffered from a mental disability. Mr. Colon was examined by the Army on three pertinent occasions, upon enlisting in 1969 and 1974 and prior to separation in 1975, and each time Mr. Colon was determined to be qualified for service or separation. AR 21, 73, 85–86 (Reports of Medical Examination). While Mr. Colon concealed his prior medical history when he enlisted in 1974 (as he again did when he enlisted a third time in 1977), the Army was provided with complete answers during his examinations in 1969 and 1975, the most important being when he was discharged in 1975. The fact that he concealed his prior medical history in 1974 shows that he was aware of his problematic medical conditions, but it does not indicate that he knew he was medically disabled. Consequently, the court concludes that Mr. Colon possessed insufficient knowledge that he suffered from a disability that made him eligible for disability retirement when he was discharged in 1975. *See Chambers,* 417 F.3d at 1226–27 (noting that prior to discharge Chambers received diagnoses of "transient stress reaction," "transient situational stress," and "mild situational anxiety," all of which indicated that his condition at the time was "minor, temporary and circumstantial").

■ Accordingly, the court applies the general rule with respect to the statute of limitations, and holds that Mr. Colon's claim is not barred because he filed his complaint in this court within six years of the ABCMR's denial of his application. *See* 28 U.S.C. § 2501; *Chambers,* 417 F.3d at 1227. Furthermore, because Mr. Colon asserts a disability retirement claim under the Tucker Act, 28 U.S.C. § 1491(a)(1), and a money mandating statute, 10 U.S.C. § 1201, *see Chambers,* 417 F.3d at 1224, this court possesses subject matter jurisdiction over the merits of Mr. Colon's claim, and the government's motion to dismiss is denied.

## C. The Government's Defenses

The government argues that the court should grant the government's motion for judgment upon the administrative record because Mr. Colon's claims are barred by the doctrines of laches and equitable estoppel. Def.'s Mot. at 13–17.

### 1. Laches.

The government avers that the doctrine of laches applies because Mr. Colon failed to act promptly in asserting his claim before the ABCMR. *Id.* at 14. The defense of laches requires "a showing of '(1) unreasonable and unexcused delay by the claimant, and (2) prejudice to the other party, either economic prejudice or "defense prejudice"— impairment of the ability to mount a defense.'" *Cygnus Corp. v. United States,* 63 Fed.Cl. 150, 154 (2004) (quoting *Mississippi Dep't of Rehab. Servs. v. United States,* 61 Fed.Cl. 20, 30 (2004), and *JANA, Inc. v. United States,* 936 F.2d 1265, 1269 (Fed.Cir. 1991)), *aff'd,* 2006 WL 1049326 (Fed.Cir. Apr.13, 2006) (Fed. Cir. Rule 36). The mere passage of time, without more, does not constitute laches. *United Enter. & Assocs. v. United States,* 70 Fed.Cl. 1, 21 (2006). The decision whether the doctrine of laches should be applied rests in the sound discretion of the court "and should not be made by reference to 'mechanical rules.'" *Id.* (quoting *Aero Union Corp. v. United States,* 47 Fed.Cl. 677, 686 (2000)). The burden of proving laches rests with the defendant. *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,* 988 F.2d 1157, 1161 (Fed.Cir. 1993); *Cygnus,* 63 Fed.Cl. at 154.

"When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." *United Enter. & Assocs.,* 70 Fed.Cl. at 21; *Cygnus,* 63 Fed.Cl. at 154 (quoting *Mississippi Dep't of Rehab. Servs.,* 61 Fed.Cl. at 30; *Advanced Cardiovascular Sys.,* 988 F.2d at 1161). A showing of sufficient prejudice to the government may, as a conceptual matter, be sufficient to overcome this general precept. *Cygnus,* 63 Fed.Cl. at 154.

The government has failed to establish that there was an unreasonable delay in Mr. Colon's pursuit of his claim. Mr. Colon was officially diagnosed with PTSD as early as 1983, *see supra,* at 477–78, and sought review of his unfavorable discharge four years later. AR 223–24. Both of Mr. Colon's applications to the ADRB, in 1987 and 1988, were timely because he sought review of his discharge within fifteen years of the date of his adverse discharge, November 25, 1975. AR 221–22, 223–24; *see* 10 U.S.C. § 1553(a) ("A motion or request for review must be made within 15 years after the date of discharge or dismissal."). The ABCMR's subsequent consideration of Mr. Colon's application for correction of his military records built upon the partial relief he had obtained from the ADRB.

The government contends that Mr. Colon did not need to apply to the ADRB, prior to pursuing his claim before the ABCMR, and therefore he unreasonably delayed filing his request with the ABCMR, waiting until more than 10 years had passed after he was first diagnosed with PTSD. Def.'s Reply at 7–8. This assertion is unavailing. "The ABCMR will not consider an application until the applicant has exhausted all administrative remedies to correct the alleged error or injustice." Army Regulation 15–185 § 2–5. Mr. Colon's application to the ADRB comported with this exhaustion requirement. Therefore, the court holds that the doctrine of laches does not bar consideration of Mr. Colon's claim.

### 2. Equitable Estoppel.

The government also contends that Mr. Colon is equitably estopped from pursuing his claim in this court because he fraudulently enlisted in the Army in 1974 by failing to disclose his prior medical history. Def.'s Mot. at 15–17. "It has long been a standing principle in this court that the conduct and admissions of a party operate against him in the nature of an estoppel when the other party detrimentally relies upon that conduct or those admissions." *City of Gettysburg, S.D. v. United States,* 64 Fed.Cl. 429, 449 (2005) (quoting *Weir v. United States,* 200 Ct.Cl. 501, 474 F.2d 617, 622 (1973)), *aff'd,* 2006 WL 701951 (Fed.Cir. Mar.16, 2006) (Fed. Cir. Rule 36). "The elements of equitable estoppel are (1) misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." *City of Gettysburg,* 64

Fed.Cl. at 449 (citing *Lincoln Logs Ltd. v. Lincoln Pre–Cut Log Homes, Inc.,* 971 F.2d 732, 734 (Fed.Cir.1992); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed.Cir.1992)).[14]

The government emphasizes that Mr. Colon did not inform the Army at the time of his enlistment in 1974 that he had trouble sleeping, suffered from nervousness, and had been treated for a mental condition in 1971 with medication and group therapy. Def.'s Mot. at 16; *Compare* AR 74–75 (Report of Medical History), *with* AR 393–395 (Hoja de Registro).

Mr. Colon's failure to provide a complete medical history, and particularly to divulge the condition of his mental health from 1971 to 1974, is problematic. Mr. Colon responds that the Army was on notice of his prior mental history, based on his affirmative answers to the medical history questionnaire that he completed upon enlisting in the Army in 1969. Pl.'s Cross–Mot. at 18; *see* AR 22–23 (Report of Medical History) (stating that he had been a patient in a mental hospital). Mr. Colon further contends that the Army was aware of his prior service in the Army from 1969 to 1970 and therefore could have referred to the medical history that he had provided to the Army during his first enlistment. Pl.'s Cross–Mot. at 18, 20–21; AR 68 (Enlistment Contract). Mr. Colon's contentions, however, fail to address his deteriorating mental condition from 1971 to 1974. *See* AR 288 (Dr. Wilson's affidavit) (stating that "[i]n November 1971, Mr. Diaz[ ]Colon's disability had progressed significantly, requiring him to visit a hospital ... for the purpose of diagnosis, treatment and medication.... The seriousness of the symptoms of [PTSD] were such that he could not manage without the help of medical assistance and medication."). Moreover, although Mr. Colon received a medical examination upon enlisting in the Army in 1974, and was deemed qualified for service, AR 73 (Report of Medical Examina-

tion), the court concludes that the Army reasonably relied in part on Mr. Colon's statements and omissions regarding his medical condition in reaching its determination to reenlist him at that time.

Procedurally, the court's focus in this case is not on initial fact finding but rather with "a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157 (emphasis in original). Consequently, in this instance, the court does not have the task of deciding whether to apply the doctrine of equitable estoppel as a *de novo* matter. Rather, it must analyze and determine whether the ABCMR's decision to forestall Mr. Colon's claim was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Id.*

### D. The ABCMR's Denial of Mr. Colon's Application for Disability Retirement Benefits

■ The ABCMR denied Mr. Colon's application on two alternative grounds: that (1) Mr. Colon fraudulently enlisted in the Army in 1974 when he failed to provide notice to the Army of his prior treatment for a mental condition, and the fraudulent enlistment precluded consideration of disability retirement benefits based on the same mental condition that he concealed, and (2) Mr. Colon was precluded from being processed for disability retirement benefits in 1975 because at that time he was being processed for a separation under other than honorable conditions. AR 426 (Memorandum of Consideration). Mr. Colon bears the burden of establishing by " 'cogent and clearly convincing evidence' " that the ABCMR's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986) (quoting *Dorl v. United States,* 200 Ct.Cl. 626, 633 (1973), and citing *Heisig,* 719 F.2d at 1156,

---

**14.** Application of the doctrine of equitable estoppel has alternatively required that "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

*Emeco Indus. v. United States,* 202 Ct.Cl. 1006, 485 F.2d 652, 657 (1973); *accord JANA, Inc.,* 936 F.2d at 1270. This formulation of equitable estoppel, however, has generally been applied where a private party seeks to invoke the doctrine against the government. *See generally Shoshone Indian Tribe of the Wind River Reservation v. United States,* 58 Fed.Cl. 542, 548 n. 4 (2003).

and *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979) (*en banc*)).

In 1975, the Army defined fraudulent entry as "the procurement of an enlistment, induction, or period of active service through any deliberate material misrepresentation, omission, or concealment which, if known, might have resulted in rejection." Army Regulation 635-200 § 14-5 (1973). In a listing of examples of fraudulent procurement of an enlistment, the Army included the concealment of a medical defect or disability. *Id.* § 14-5.e.[15] Also, based upon regulations in existence in 1975, "[n]o enlisted member [could] be referred for physical disability processing when action ha[d] been or w[ould] be taken to separate him for . . . misconduct under chapter 14, A[rmy] R[egulation] 635-200," the regulation pertaining to fraudulent entry. Army Regulation 635-40 § 1-2.e (1975).

The ABCMR reviewed the record in its entirety, encompassing Mr. Colon's three periods of service in the Army and Army Reserve. AR 424-26 (ABCMR Memorandum of Consideration). The Board canvassed Mr. Colon's file in considerable detail, comparing Mr. Colon's mental condition during the period from 1971 to 1974 with his responses on the Report of Medical History when he enlisted in 1974. *Id.* In its decision, the ABCMR did not specifically cite the relevant Army definition for fraudulent enlistment in 1974 or 1975 or the example of concealment of a medical defect. *Id.* Nonetheless, the Board's attention to factual detail is much more instructive than its omission of citations to Army Regulations. The resulting factual findings by the Board are supported by substantial evidence. The administrative record before the ABCMR shows that Mr. Colon suffered from a mental condition prior to enlisting in 1974, for which he received treatment from prescribed medicine and group therapy, and which condition Mr. Colon's own medical expert on PTSD described as

"serious[ ]" such that Mr. Colon "could not manage without the help of medical assistance and medication." AR 288 (Dr. Wilson's affidavit) (Dr. Wilson also described Mr. Colon's condition as early as 1971 as "disoriented, confused, and unknowingly disabled."). Therefore, the court concludes that the ABCMR had adequate grounds for its determination that Mr. Colon fraudulently entered the Army in 1974 because he concealed his prior treatment for a mental condition.

Mr. Colon has also failed in his burden to show that the Board's decision is contrary to law. Based on the ABCMR's finding that he fraudulently entered the Army in 1974, Mr. Colon would have been ineligible to be referred for physical disability processing in 1975. *See* Army Regulation 635-40 § 1-2.e (1975). In addition, the physician who examined Mr. Colon in 1975 prior to his separation had full notice of Mr. Colon's condition in light of Mr. Colon's complete disclosure at that time of all his medical conditions and prior treatment for a mental condition. *See* AR 87-88 (Report of Medical History). Finally, the ADRB's subsequent decision to reclassify Mr. Colon's discharge in 1975 as a general discharge under honorable conditions has no bearing on the ABCMR's decision. Had Mr. Colon been discharged for fraudulent entry in 1975, he could have received any of the forms of discharge, including a general discharge under honorable conditions. *See* Army Regulation 635-200 § 14-12.a-b (1973) (permitting a commander to issue an honorable, general, or undesirable discharge certificate if fraudulent entry has been verified).

Consequently, the court holds that plaintiff has failed to establish that the ABCMR's denial of Mr. Colon's application for correction of his military records to provide for disability retirement as of 1975, was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

---

15. As this example was described, an individual would be found to have fraudulently entered the Army if "it [wa]s established that such concealment [of a medical defect or disability] was for the purpose of obtaining veteran's benefits, hospitalization, disability retirement, or monetary benefits to which the individual was not enti-

tled." Army Regulation 635-200 § 14-5.e. The court is satisfied that Mr. Colon did not seek to enter the Army in 1974 to gain veteran's benefits, hospitalization, disability retirement, or other monetary benefits related to his medical condition. Rather, Mr. Colon appears simply to have wanted to rejoin the military as a chosen career.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss is DENIED but its motion for judgment on the administrative record is GRANTED. Plaintiff's cross-motion for judgment on the administrative record is accordingly DENIED.[16] The Clerk is directed to enter judgment for defendant. No costs.

IT IS SO ORDERED.

16. Plaintiff's Motion to Substitute Plaintiff is GRANTED. The clerk of the court shall amend the caption of this case to reflect the substitution of Rafael Diaz Acevedo for deceased plaintiff Rafael Diaz Colon.