2022 IL App (4th) 210609
NO. 4-21-0609

FILED
December 21, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| DAVID W. PRATHER, | ) | No. 20CF103 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1       The circuit court of Woodford County sentenced defendant, David W. Prather, to an extended prison term of eight years for aggravated driving under the influence of alcohol (DUI). See 625 ILCS 5/11-501(a), (d)(2)(B) (West 2020); 730 ILCS 5/5-5-3.2(b)(1) (West 2020). He appeals, challenging the sentence on two grounds.

¶ 2       First, he disputes his eligibility for an extended prison term. We find this sentencing issue to be procedurally forfeited. Further, because we are unconvinced that extended-term sentencing was a clear or obvious error in this case, the doctrine of plain error, invoked by defendant, does not avert the forfeiture. This lack of a clear or obvious error likewise defeats his alternative claim that defense counsel rendered ineffective assistance by causing the forfeiture.

¶ 3 Second, defendant contends that, in the sentencing hearing, the circuit court abused its discretion by ignoring six mitigating factors. This sentencing issue also is procedurally forfeited. Defendant accuses defense counsel of rendering ineffective assistance by causing this forfeiture as well. To prove this claim of ineffective assistance, defendant would have to show a reasonable probability that the six allegedly mitigating factors, had they been raised to the circuit court, would have resulted in a lighter sentence. We find no such reasonable probability.

¶ 4 Therefore, we affirm the judgment.

¶ 5 I. BACKGROUND

¶ 6 The State charged that on July 6, 2020, in Woodford County, defendant committed a Class 2 felony, aggravated DUI. See 625 ILCS 5/11-501(a), (d)(2)(B) (West 2020). The DUI was aggravated, the State alleged—and hence was a Class 2 felony instead of a Class A misdemeanor (see *id.* § 11-501(c)(1))—because defendant previously committed two offenses of DUI in Mississippi. The nonextended term of imprisonment for a Class 2 felony was not less than three years and not more than seven years. 730 ILCS 5/5-4.5-35(a) (West 2020). The extended term was not less than 7 years and not more than 14 years. *Id.* The prosecution notified the defense of its intention to seek extended-term sentencing.

¶ 7 The prosecution and the defense disagreed on whether defendant, if convicted of aggravated DUI, could be sentenced to an extended term of imprisonment. The prosecution maintained that because defendant had a prior conviction of attempted aggravated assault from 2012 in Mississippi (see Miss. Code Ann. § 97-3-7(2)(b) (West 2012)), section 5-5-3.2(b)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-3.2(b)(1) (West 2020)) made him eligible for an extended term. That section provided as follows:

"(b) The following factors, related to all felonies, may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 [(*id.* § 5-8-2)] upon any offender:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts[.]" *Id.* § 5-5-3.2(b)(1).

According to the defense, that statute was inapplicable. The defense argued that, under the appellate court's interpretation of section 5-5-3.2(b)(1) in *People v. Bailey*, 2015 IL App (3d) 130287, the attempted aggravated assault was not a "similar class felony." 730 ILCS 5/5-5-3.2(b)(1) (West 2020). In a preplea motion titled "Motion For Determination of Sentencing Range," the original defense counsel requested a ruling, on the authority of *Bailey*, that defendant was "not extended-term eligible." A hearing on this motion was scheduled, but after the substitution of new defense counsel, the hearing was called off and was never rescheduled.

¶ 8        Represented by new defense counsel, defendant pleaded guilty to *unaggravated* DUI and waived his right to a jury trial. In his written guilty plea, the following qualification was penned in: "Defendant does not waive requirement for State to prove prior convictions which he has been given notice of pursuant to 725 ILCS 5/111-3 (Enhanced Sentencing)." When admonishing defendant on his guilty plea, the circuit court explained to him that, actually, it was the *commission* of two prior offenses of DUI that would elevate simple DUI to aggravated DUI and that prior *convictions* of DUI would not have to be proven. After conferring with defense

counsel, defendant persisted in his guilty plea. The court accepted the guilty plea to unaggravated DUI, ordered a presentence investigation report, and set the matter for sentencing.

¶ 9        In the sentencing hearing, the circuit court inquired if any corrections needed to be made to the presentence investigation report. Defense counsel answered that he disputed the part of the report listing two previous convictions of DUI. According to defense counsel, "[t]hey were not adjudicated as guilty in either of those two counties in Mississippi." Defense counsel did not dispute the authenticity of the certified court records the prosecutor had obtained from Benton and Tippah Counties, Mississippi. Defense counsel insisted, however, that those records were insufficient on their face because they failed to show convictions. "I am not contesting he was arrested for those two offenses," defense counsel explained, "but he was not adjudicated in any way, shape, or form guilty of those offenses in Tippah or Benton Counties." To reinforce this distinction, defense counsel called defendant to the stand. Defendant testified that, in the Benton County case, he received a ticket for DUI but that, in lieu of conviction, the authorities "gave [him] the option to go to school, so [he] went to a school." He likewise denied having been convicted in the Tippah County case. "I never went to court on it," he recounted. "It was, like that was it. It was an under-the-table kind of thing." The defense presented a certified copy of defendant's driving record from Mississippi, which lacked any mention of DUI.

¶ 10        The circuit court reiterated, however, that the aggravated DUI statute spoke of violations, not convictions. The statute read, "A third *violation* of this Section or a similar provision is a Class 2 felony." (Emphasis added.) 625 ILCS 5/11-501(d)(2)(B) (West 2020). The certified court records from Mississippi appeared to presuppose commissions of DUI. The records from Benton County, for example, included a document, signed by defendant, in which he "waived my right to an attorney in justice court, knowing this to be my 1st offense on DUI charges." In that

- 4 -

document, the judge ordered defendant to "attend [Mississippi Alcohol Safety Education Program] school." Also, the records from Tippah County included a traffic ticket, in which the issuing police officer stated under oath that defendant had been driving with an "alcohol concentration" of "[0].13%," a test result that exceeded the legal limit of "[0].08%." In addition, there was an order, signed by a Tippah County judge, stating that defendant had pleaded guilty to DUI, for which was sentenced to time served. In the circuit court's view, the records tended to prove, if not convictions, then at least two commissions of DUI in Mississippi: a violation in Benton County and another violation in Tippah County. Consequently, the court determined that the present DUI was aggravated, a Class 2 felony. See *id.*

¶ 11    The circuit court further determined (without further explanation) that defendant was "eligible for extended-term sentencing *** based upon the aggravated assault from 2012 in Tippah County, Mississippi."

¶ 12    Next, the circuit court scrutinized the factors in mitigation and aggravation. The court said, "In looking at factors in mitigation this court believes applies to this case[,] the court finds none." But the court found three factors in aggravation. First, the court found that "defendant's conduct threatened serious physical harm to others, including himself." The arresting police officer, Illinois State Trooper Andrew Krusz, had testified in the sentencing hearing that defendant "blew a [0].138" (to quote from Krusz's testimony). Also, Krusz had authenticated a squad car video of defendant driving through a construction zone while his driving ability evidently was impaired. According to the court, this video

> "showed the defendant's vehicle careening through a construction zone while a
> worker was present holding up a yield sign[,] knocking over a barrel that was a

mere feet away from the construction worker in the construction zone, and by the grace of God missing that individual and not hitting anything else."

Second, defendant had a "rather extensive" criminal history, which included "several offenses of violence." Third, the court perceived a need to deter other drivers from driving while intoxicated and endangering construction workers. Considering these aggravating factors, the lack of any mitigating factors, and "the nature and circumstances of the offender and the offender's conduct," the court imposed a sentence of eight years' imprisonment. This sentence was an extended prison term that was one year more than the maximum nonextended prison term. See *id.*; 730 ILCS 5/5-4.5-35(a) (West 2020).

¶ 13                              II. ANALYSIS

¶ 14                  A. Defendant's Eligibility for an Extended Prison Term

¶ 15             Holding a preplea hearing on the "Motion For Determination of Sentencing Range" would have preserved no sentencing issue for review. Rather, "[i]t is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). In other words, a sentencing issue is deemed, on appeal, to be forfeited unless the defense (1) raised the issue in the sentencing hearing and (2) raised the issue again in a postsentencing motion.

¶ 16             In the sentencing hearing in this case and in the postsentencing motion, defense counsel never challenged extended-term sentencing *per se*. He never argued that the Mississippi conviction of attempted aggravated assault failed to meet the statutory description of a "similar class felony." 730 ILCS 5/5-5-3.2(b)(1) (West 2020). Instead, he claimed that two prior DUI convictions from Mississippi were unproven and that, consequently, two prior commissions of DUI were unproven. Thus, defense counsel took the position that the present offense of DUI was

unaggravated and, as such, was merely a Class A misdemeanor rather than a Class 2 felony. To be sure, he thereby challenged the extended prison term indirectly—without a Class 2 felony, there could have been no extended prison term for a Class 2 felony—but the line of attack was different then from what it is now. Therefore, the rule of forfeiture would suggest that the sentencing issue defendant raises on appeal—namely, whether attempted aggravated assault in Mississippi is a "similar class felony" (*id.*)—has been lost. See *Hillier*, 237 Ill. 2d at 544; see also *People v. Baez*, 241 Ill. 2d 44, 129-30 (2011) (characterizing a postsentencing motion as "the functional equivalent of a posttrial motion for the purpose of preserving issues for appeal" (internal quotation marks omitted)); *People v. Leggans*, 253 Ill. App. 3d 724, 732 (1993) (holding that "[e]rrors which are not raised with sufficient specificity in the post-trial motion are not preserved for appellate review").

¶ 17          Defendant seeks to avert the forfeiture by invoking the doctrine of plain error, "a narrow and limited exception" to the rule of procedural forfeiture. *Hillier*, 237 Ill. 2d at 545. To win relief under the plain error doctrine, the defendant must gain admission into an anteroom of the doctrine, so to speak, by showing that a clear or obvious error was committed. See *id.* After making that threshold showing, the defendant "must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* Defendant maintains that the second of those two propositions holds true in his case. He claims that his "criminal history should not have made him eligible for extended-term sentencing" and that sentencing him to eight years' imprisonment, one year beyond the maximum nonextended term (see 730 ILCS 5/5-4.5-35(a) (West 2020)), made his sentencing hearing unfair. See *People v. Myrieckes*, 315 Ill. App. 3d 478, 483 (2000).

¶ 18    Before reaching this second prong of the plain error doctrine, we must address the threshold question of whether defendant's ineligibility for an extended prison term is clear or obvious (see *Hillier*, 237 Ill. 2d at 545)—not merely arguable, but clear or obvious (see *People v. Stevenson*, 2020 IL App (4th) 180143, ¶ 14). In defendant's view, *Bailey* calls for an affirmative answer to that question.

¶ 19    The defendant in *Bailey* pleaded guilty to the Class 2 felony of aggravated domestic battery (720 ILCS 5/12-3.3(a-5), (b) (West 2010)). *Bailey*, 2015 IL App (3d) 130287, ¶ 3. He had a prior conviction from California, unlawful taking or driving of a vehicle (Cal. Veh. Code § 10851 (West 2004)). *Bailey*, 2015 IL App (3d) 130287, ¶ 4. The State argued that, under section 5-5-3.2(b)(1) of the Unified Code (730 ILCS 5/5-5-3.2(b)(1) (West 2010)), the defendant was eligible for an extended prison term because the California offense was comparable, in its elements, to the Class 2 felony of possessing a stolen or converted vehicle (625 ILCS 5/4-103 (West 2004)). See *Bailey*, 2015 IL App (3d) 130287, ¶ 4. But the defendant in *Bailey* had not pleaded guilty to possessing a stolen or converted vehicle; he had pleaded guilty to aggravated domestic battery. *Id.* ¶ 3. Instead of comparing the sentencing range of the California offense to the sentencing range of the offense to which the defendant had pleaded guilty, the State found an Illinois offense having elements "nearly identical" to those of the California offense and compared those two offenses. *Id.* ¶ 5. On the basis of this comparison, the circuit court imposed upon the defendant an extended prison term. *Id.*

¶ 20    The defendant in *Bailey* appealed. According to him, searching for an analogous uncharged Illinois offense was the wrong way to go about determining eligibility for extended-term sentencing. He argued that, instead, the circuit court should have simply compared the sentencing range for the California offense, unlawful taking or driving of a vehicle (Cal. Veh. Code

§ 10851 (West 2004)), with the sentencing range for the offense to which he had pleaded guilty, aggravated domestic battery (720 ILCS 5/12-3.3(a-5), (b) (West 2010)). See *Bailey*, 2015 IL App (3d) 130287, ¶ 10. Had the court done so, it would have found that "the maximum sentence for the 2005 California conviction was three years." *Id.* By contrast, the Illinois offense, the Class 2 felony of aggravated domestic battery, "carrie[d] a sentencing range of three to seven years." *Id.* Thus, the defendant reasoned, the California offense was not a " 'similar class felony' " when compared to aggravated domestic battery, but rather, the California offense was a less serious offense. Therefore, defendant concluded, he was ineligible for an extended prison term. *Id.* (quoting 730 ILCS 5/5-5-3.2(b)(1) (West 2010)).

¶ 21    In short, the defendant in *Bailey* maintained that his eligibility for an extended prison term depended on whether the California offense was at least as serious as his present offense—seriousness being measured by the respective sentencing ranges (or classes). The class of a felony, after all, was supposed to be a signifier of the felony's egregiousness. The California offense, judging by its legislatively prescribed range of punishment, was of a lower class. But the Third District was unconvinced. Instead of adopting the defendant's approach, the Third District adopted the State's comparative elements approach, modifying it, however, to take into account the statutory ranges of punishment:

> "After reviewing the statute and applying the rules of statutory construction, we believe the legislative intent was to consider both the sentencing range and the elements in determining whether a conviction in another jurisdiction is of 'the same or similar class felony.' In making a section 5-5-3.2(b)(1) determination, a comparison should also include the sentencing range of the prior conviction with the sentencing range of an equivalent Illinois offense." *Id.* ¶ 14.

Thus, according to the Third District in *Bailey*, the sentencing court was to find an Illinois offense that was "equivalent" to the "conviction in another jurisdiction"—meaning, apparently, an Illinois offense having similar elements. *Id.* Then the court was to compare the sentencing ranges of the two offenses, that is, the Illinois analogue and the foreign conviction. *Id.* The circuit court had erred, the Third District concluded, by "consider[ing] only the elements of the offense," without "compar[ing] the California offense to the equivalent Class 2 offense in light of the different sentencing range." *Id.* ¶ 16. Therefore, the Third District remanded the case for a new sentencing hearing, in which the circuit court was "to compare the sentencing ranges, as well as the elements of the offenses, to determine whether the California conviction [was] the 'same or similar class felony' to the Class 2 offense for which [the] defendant was sentenced." *Id.*

¶ 22 Taking his cue from *Bailey*, defendant identifies an Illinois offense, aggravated assault (720 ILCS 5/12-2(c)(7) (West 2020)), that, in his view, has elements comparable to those of the Mississippi offense of which he previously was convicted, attempted aggravated assault (Miss. Code Ann. § 97-3-7(2)(b) (West 2012)). In other words, he identifies aggravated assault as the Illinois analogue to the Mississippi offense of attempted aggravated assault. He notes that "both statutes punish conduct that knowingly puts a person in fear of receiving bodily harm." Whereas "Mississippi's statute uses the language 'with a deadly weapon' " (*id.* § 97-3-7(2)(a)(ii)), the Illinois statute specifies the deadly weapon "by identifying motor vehicles specifically" (see 720 ILCS 5/12-2(c)(7) (West 2020)). The Illinois analogue of aggravated assault is a Class 4 felony (*id.* § 12-2(d)), which is punishable by imprisonment for only one year to three years. 730 ILCS 5/5-4.5-45(a) (West 2020). As defendant puts it, "[t]he elements of the Mississippi offense suggest that he would have been convicted of a Class 4 felony, had it occurred in Illinois." He argues, therefore, that the Mississippi offense, when translated into Illinois terms, is a *less serious* offense

than the Class 2 felony of aggravated DUI, punishable by three to seven years' imprisonment. By this reasoning, the Mississippi offense is not a "similar class felony" when compared to the offense of which he stands convicted in the present case. *Id.* § 5-5-3.2(b)(1). Accordingly, he urges us to find him to be ineligible for extended-term sentencing, to reverse this plain error, and to remand this case for resentencing as a nonextended case. At the very least—noting the circuit court's lack of a reasoned explanation for finding the Mississippi offense to be a "similar class felony"—he urges us to remand the case so that the court "can analyze whether [he] is extended-term eligible."

¶ 23    The State disputes the necessity of such a remand. In the State's view, the basis for an extended prison term is already apparent from the record. In Mississippi, the State observes, "defendant pled to a charge with a 20-year indeterminate prison sentence, which exceeds both the normal and extended-term range on a Class 2 felony in Illinois, which would be [3] to [7] years on a normal sentence and up to 14 years on an extended sentence." The State argues that, under *People v. Cavins*, 288 Ill. App. 3d 173 (1997), the Mississippi sentencing range for attempted aggravated assault should be compared with the Illinois sentencing range for aggravated DUI. According to *Cavins*, if the foreign offense carries a higher maximum prison term than the Illinois offense for which the defendant is to be sentenced, the foreign offense can be regarded as a "similar class felony," even if the foreign jurisdiction has indeterminate sentencing.

¶ 24    *Bailey* and *Cavins* are simply irreconcilable. In *Cavins*, the defendant entered an open plea of guilty to a charge of burglary, a Class 2 felony (*id.* at 175), which was punishable by a nonextended prison term of not less than three years and not more than seven years (*id.* at 176). He had a prior conviction, from Iowa, of third degree kidnapping, which was punishable by an indeterminate prison term of not more than 10 years. *Id.* Because the punishment for the Iowa offense, third degree kidnapping, was "at least as severe" as the punishment for the Illinois

burglary to which the defendant had pleaded guilty, the circuit court found the Iowa conviction to be a " 'similar class felony' " within the meaning of section 5-5-3.2(b)(1). *Id.* at 184. Therefore, the court imposed upon him an extended prison term of 10 years. *Id.* at 175. The Fifth District deemed the circuit court's interpretation of section 5-5-3.2(b)(1) to be "reasonable" and found no abuse of discretion in the extended prison term. *Id.* at 184.

¶ 25　　　　Thus, unlike the Third District in *Bailey*, the Fifth District in *Cavins* did not search for an Illinois analogue: an offense that was comparable, in its elements, to the out-of-state offense of which the defendant previously was convicted. Instead, the Fifth District approved a simpler method, comparing the sentencing range for the out-of-state offense with the nonextended sentencing range of punishment for the Illinois offense for which the defendant was to be sentenced. If the range of punishment for the out-of-state offense was "at least as severe" as the range of punishment for the Illinois offense, an extended prison term would be no abuse of discretion. *Id.*

¶ 26　　　　In our *de novo* interpretation of section 5-5-3.2(b)(1) (730 ILCS 5/5-5-3.2(b)(1) (West 2020)), we conclude that *Cavins* offers the more persuasive reading of that statute. See *People v. Williams*, 2016 IL 118375, ¶ 14 (holding that, insomuch as the resolution of an issue requires the supreme court "to construe a statute, our review is *de novo*"). Because we are supposed to interpret statutes in accordance with their "plain language and meaning" (*DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006)), we return to the text of section 5-5-3.2(b)(1):

　　　　　　"(b) The following factors, related to all felonies, may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 [(730 ILCS 5/5-8-2 (West 2020))] upon any offender:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts[.]" 730 ILCS 5/5-5-3.2(b)(1) (West 2020).

Thus, the circuit court may sentence the defendant to an extended prison term if, within the 10-year period, the defendant was convicted of a felony of the same or similar class or greater class than the felony for which the defendant is to be sentenced. To put it more simply, if the felony of which the defendant previously was convicted was as bad as, or worse than, the felony for which the defendant is to be sentenced, the defendant is eligible for an extended prison term. The relative egregiousness of offenses is gauged by their respective classes, the legislative groupings of offenses into ranges of punishment.

¶ 27        If the prior felony conviction was in Illinois, comparing its class to the class of the present offense will likely be easier than if the prior felony conviction was in another jurisdiction, such as another state. Other states might classify felonies differently than Illinois. For that reason, in addition to referring to "the *same* *** class felony," section 5-5-3.2(b)(1) refers to "the *** *similar* class felony" (*id.*). (Emphases added.) See *Cavins*, 288 Ill. App. 3d at 184. Even if the classification systems differ, the defendant can receive an extended prison term if the range of punishment the other state has prescribed for the prior offense can be reasonably characterized as just as severe as (or more severe than) the range of punishment that Illinois has prescribed for the present offense.

¶ 28    We say "reasonably" because although the meaning of section 5-5-3.2(b)(1) is a question of law (see *Williams*, 2016 IL 118375, ¶ 14), it is a judgment call whether two sentencing ranges can be compared for levels of severity. If the circuit court finds a "similar class felony," we will defer to that exercise of discretion unless the court abused its discretion. See *Cavins*, 288 Ill. App. 3d at 184; *People v. Moss*, 275 Ill. App. 3d 748, 758 (1995) (holding that "[t]he abuse-of-discretion standard *** applies when determining whether a court properly found a defendant eligible for an extended-term sentence").

¶ 29    Under section 5-5-3.2(b)(1), then, the circuit court uses its discretion by comparing classes of felonies, not elements of felonies. The text of that section says nothing about identifying an Illinois offense having elements comparable to those of the prior conviction from the other jurisdiction. See *DeSmet*, 219 Ill. 2d at 510 (remarking that, "[w]here an enactment is clear and unambiguous, we are not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations[,] or conditions that the legislature did not express"). Elsewhere in the Unified Code, the legislature demonstrates an ability to plainly say so when it wants the elements of offenses to be compared—most notably, by using the term "elements." In fact, a couple of statutory examples are quoted in *Bailey*.

>    "Under section 5-4.5-95(b) of the [Unified] Code, a defendant must be sentenced as a Class X felon if the defendant has '[twice been] convicted in any state or federal court of an offense that contains the *same elements* as an offense now *** classified in Illinois as a Class 2 or greater Class felony.' " (Emphasis in original.) *Bailey*, 2015 IL App (3d) 130287, ¶ 13 (quoting 730 ILCS 5/5-4.5-95(b) (West 2012)).

Or to take the other example from *Bailey*,

"[u]nder section 5-5-3(c)(2)(F) of the [Unified] Code, a defendant is subject to a mandatory sentence of imprisonment if he or she has been convicted of 'a Class 2 or greater felony, including any state or federal conviction for an offense that contained, at the time it was committed, the *same elements* as an offense now [***] classified [ ] **as a Class 2 or greater felony.' "** **(Emphasis added.)** *Id.* (quoting 730 ILCS 5/5-5-3(c)(2)(F) (West 2012)).

By contrast, section 5-5-3.2(b)(1) of the Unified Code (730 ILCS 5/5-5-3.2(b)(1) (West 2020)) contains no mention of "elements." "Where a particular provision appears in a statute," the noninclusion of "that same requirement in another section of the statute will not be deemed to have been inadvertent." *Village of Southern View v. County of Sangamon*, 228 Ill. App. 3d 468, 473 (1992). Considering that, in other sections of the Unified Code, the legislature says to compare the elements of offenses but in section 5-5-3.2(b)(1), the legislature does not say to do so, we understand section 5-5-3.2(b)(1) as not contemplating the comparison of elements. See *id.*

¶ 30        Instead of requiring the identification of an Illinois analogue, section 5-3.2(b)(1) requires a comparison of two felonies of which the defendant has been "convicted": (1) the Illinois felony for which the defendant is about to be sentenced and (2) the felony of which the defendant previously was convicted. 730 ILCS 5/5-5-3.2(b)(1) (West 2020). More specifically, section 5-5-3.2(b)(1) requires that the sentencing court compare the "class[es]" of the two felonies of which the defendant has been "convicted." *Id.* In the Unified Code, the term "class," when used with reference to the classification of felonies, has a particular meaning. "[W]here a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed." *People v. Ashley*, 2020 IL 123989, ¶ 36. The "class" of an offense signifies the range of punishment the

- 15 -

offense normally carries—for example, "Class X felonies," "Class 1 felonies," "Class 2 felonies," and so forth. See 730 ILCS 5/5-4.5-10 (West 2020). Taking the ranges of permissible punishment as measures of the seriousness of offenses, the Illinois General Assembly decided as follows. If, within the 10-year period in section 5-5-3.2(b)(1), the defendant was convicted of a felony as serious as, or more serious than, the present felony, the circuit court should be able to impose an extended prison term. See *id*. § 5-5-3.2(b)(1).

¶ 31    The seriousness of a prior felony conviction from another state depends on how seriously that state, as opposed to Illinois, takes the offense, as reflected in the range of punishment that state assigns to the offense. After all, the very existence of the offense depends on that state's law. As *Bailey* and *Cavins* seem to agree, the Illinois legislature accepts other states' judgment of what qualifies as a felony. It would seem strange and anomalous, then, if the Illinois legislature rejected other states' judgment of how serious a felony committed within their borders is.

¶ 32    The Mississippi offense of attempted aggravated assault, which carried a maximum prison term of 20 years (Miss. Code. Ann. § 97-3-7 (West 2012)), was at least as serious as aggravated DUI, which carried a maximum nonextended prison term of 7 years (625 ILCS 5/11-501(a), (d)(2)(B) (West 2020); 730 ILCS 5/5-4.5-35(a) (West 2020)). By the logic of *Cavins*, this was true despite the indeterminacy of Mississippi sentencing. (Being released on parole for good behavior in prison would not necessarily detract from the seriousness of the offense.) Under *Cavins*, then, the extended prison term the circuit court imposed on defendant in this case was not an abuse of discretion. See *Cavins*, 288 Ill. App. 3d at 184. Absent a decision by the supreme court or by the Fourth District endorsing *Bailey*'s interpretation of section 5-5-3.2(b)(1), the circuit court was free to choose *Cavins* as the more convincing interpretation. See *People v. Ruth*, 2022 IL App (1st) 192023, ¶ 27. That the circuit court never explicitly chose *Cavins* over *Bailey* is irrelevant.

We may affirm the judgment on any basis in the record, regardless of the circuit court's rationale—and regardless of whether the circuit court even spelled out a rationale. See *People v. Munoz*, 406 Ill. App. 3d 844, 850 (2010).

¶ 33 In sum, defendant has failed to make the threshold showing required by the plain error doctrine, namely, that extended-term sentencing in his case was a clear or obvious error. See *Hillier*, 237 Ill. 2d at 545. The extended prison term imposed upon him is reasonably defensible under *Cavins*. In the absence of a clear or obvious error, the procedural forfeiture of a sentencing issue must be given effect. See *id.* Accordingly, defendant has forfeited the sentencing issue of whether, under section 5-5-3.2(b)(1), he is eligible for an extended prison term. See *id.* at 544.

¶ 34 Alternatively, defendant accuses defense counsel of rendering ineffective assistance by causing the procedural forfeiture. The plainness element of plain error and the deficient-performance element of ineffective assistance rise or fall together. See *People v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 93 (holding that "because there was no clear or obvious error, there cannot be ineffective assistance of counsel"); *People v. Banks*, 2021 IL App (4th) 180838-U, ¶ 56 ("find[ing] no clear or obvious error and, hence, no ineffective assistance"). Because it is less than clear or obvious that defense counsel should have followed *Bailey* over *Cavins*, we conclude that his decision not to challenge extended-term sentencing was " 'within the wide range of reasonable professional assistance.' " *People v. Banks*, 2021 IL App (4th) 180838-U, ¶ 52 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

¶ 35 B. The Circuit Court's Finding That There Were No Mitigating Factors

¶ 36 In the sentencing hearing, the circuit court stated, "[L]ooking at the factors in mitigation [that] the court believes appl[y] to this case[,] the court finds none." In defendant's view, this finding was an abuse of discretion that led to an overly severe sentence. See *People v.*

*Calhoun*, 404 Ill. App. 3d 362, 389 (2010) (remarking that "[o]ur courts have never been reluctant to reduce a sentence on appeal, despite the serious nature of the underlying crime, where a trial court has neglected its duty to consider the relevant mitigating factors"). He accuses his defense counsel of rendering ineffective assistance by failing to raise, in the postsentencing motion, six mitigating factors.

¶ 37 The first mitigating factor, according to defendant, was his psychological condition. To quote from his brief, he "reported that he was diagnosed with bipolar disorder and depression." He also "reported that he experiences suicidal tendencies" and that he "was grappling with the recent death of one of his children." On the authority of *People v. Robinson*, 221 Ill. App. 3d 1045, 1052 (1991), and *People v. Williams*, 62 Ill. App. 3d 966, 975-76 (1978), he argues the circuit court should have assigned some mitigating weight to his mental illnesses.

¶ 38 We see a couple of problems with that argument. For one thing, it appears the circuit court had only defendant's representation that he had been diagnosed with bipolar disorder and depression. The circuit court was "in a better position" than we are "to judge the credibility of the witnesses and the weight of the evidence at the sentencing hearing." *People v. Ramos*, 353 Ill. App. 3d 133, 137 (2004). The circuit court could have decided that the uncorroborated word of a person with defendant's criminal history (which included forgeries, embezzlement, and bad checks) was unreliable. Besides, even if the court took defendant's word for it that he had been diagnosed with bipolar disorder and depression, the supreme court has held that mental illness is "not inherently mitigating." (Internal quotation marks omitted.) *People v. Madej*, 177 Ill. 2d 116, 139 (1997). The record appears to lack evidence that bipolar disorder or depression had anything to do with defendant's commission of aggravated DUI. This evidentiary gap cannot be filled with speculation.

¶ 39 Second, defendant claims that his "struggle with drugs and alcohol" was a mitigating factor. As defendant acknowledges, however, a decision by the Fourth District undercuts that claim. See *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 105 (holding that "the trial court is not required to view drug addiction as a mitigating factor"). The supreme court likewise has rejected the argument that "a sentencing judge must consider [the] defendant's drug use as a mitigating factor in sentencing decisions." *People v. Shatner*, 174 Ill. 2d 133, 159 (1996). Nor is alcoholism inherently mitigating. See *People v. Clinton*, 2021 IL App (1st) 190694-U, ¶ 21. "[T]he sentencing judge was free to conclude that [the] defendant's dependencies and disorder were aggravating and simply had no mitigating value." *People v. Ballard*, 206 Ill. 2d 151, 190 (2002). If defendant "struggle[s] with drugs and alcohol" and if this is his third offense of DUI, the probability could be judged as strong that, given the opportunity, he would commit further offenses of DUI—an aggravating rather than a mitigating consideration.

¶ 40 Third, defendant complains that the circuit court failed to "consider the impact of incarceration on [defendant's] two living kids or his three step-children." In the sentencing hearing, defendant testified, "I have a 12-year old and a 17-year-old, I think." According to the presentence investigation report, these two surviving biological children live in Mississippi, whereas defendant, at the time of his arrest, lived in El Paso, Illinois. When the probation officer asked defendant to "describe his relationship and frequency of contact with his children," defendant answered simply, " 'Pretty good, I see them as much as I can,' " without specifying how often he saw them. He testified he also had three stepchildren and that, before his incarceration, he was "taking care of" them. He did not elaborate, however, upon the nature and extent of the care he provided to his children and stepchildren. Nor did he provide any financial documents by way of corroboration. To be sure, it would be a statutory factor in mitigation if defendant were "the parent

of a child *** whose well-being [would] be negatively affected by the parent's absence." 730 ILCS 5/5-5-3.1(a)(18) (West 2020). But it is unclear how defendant was raising his children from 600 miles away. The record does not appear to reveal whether he had any "role *** in the day-to-day educational and medical needs" of his children (*id.* § 5-5-3.1(a)(18)(C)) or that he had a meaningful "relationship" with them (*id.* § 5-5-3.1(a)(18)(D)) or contributed toward their "financial support" (*id.* § 5-5-3.1(a)(18)(F)). His relationship with his stepchildren, like his relationship with his children, was mentioned only vaguely, in passing, without any serious effort at description. Consequently, the circuit court had no solid reason to expect that defendant's children or stepchildren would suffer any negative effects from his imprisonment. We cannot say, then, that the court abused its discretion by finding no mitigating value in the parent-child relationship.

¶ 41 Fourth, according to defendant, "it is important to note that [he] had a steady work history and had a full time job before he was incarcerated." The "work history" to which defendant refers is a single job, "South Shore Industries," which he reported holding from 2019 to 2020, until he was laid off because of COVID-19. To put it differently, he was 49 years old, and when asked by the probation officer for his employment history, he could come up with only one job, which he had held for about a year. In his testimony in the sentencing hearing, defendant added that, from 1996 to 2008, "[s]omewhere around there," he was a trucker for "Massengill Trucking, L & L, Werner, [and] Gulsby." Again, however, he provided no corroborating documentation: no paystubs, W-2s, or other employment records. Nor did he explain what he did from 2008 to 2019. In short, the steadiness of his work history is debatable.

¶ 42 Fifth, defendant represents he had "an honorable discharge from the military." But that is not what the presentence investigation report says. Rather, he "reported being discharged

by way of General under Honorable Conditions." "It is *** clear that an individual who receives a general discharge under honorable conditions has not been honorably discharged." *Boylan v. Matejka*, 331 Ill. App. 3d 96, 100 (2002). While a general discharge under honorable conditions is not as bad as a discharge under other than honorable conditions, a bad conduct discharge, or a dishonorable discharge, it is not as good as an honorable discharge. See *Colon v. United States*, 71 Fed. Cl. 473, 476 n.3 (2006). " 'Characterization of service as General (under honorable conditions) is warranted when significant negative aspects of the member's conduct or performance of duty outweigh positive aspects of the member's military record.' " *Thomas v. United States*, 47 Fed. Cl. 560, 579 n.5 (2000) (quoting 32 C.F.R. pt. 41, app. A, pt. 2.C.2.b.(2) (1996) (guidance from the Office of the Secretary of Defense to enlisted members)). It appears that, instead of serving his full term of enlistment in the United States Army, defendant was administratively separated—we do not know why. In any event, military service that ends prematurely in a general discharge under honorable conditions is not very mitigating.

¶ 43 Sixth, defendant complains that the circuit court failed to consider "his overall rehabilitative potential." But the list of his prior convictions takes up over three pages in the presentence investigation report. There are convictions for embezzlement, forgery, attempted aggravated assault, domestic assault, domestic battery, criminal damage to property, and resisting a police officer, among other offenses. It would have been difficult for defense counsel to characterize defendant as having rehabilitative potential.

¶ 44 We conclude, therefore, that even if defense counsel had raised these theories of mitigation in the postsentencing motion, there would have been no reasonable probability of a lighter sentence. A claim of ineffective assistance requires a showing of prejudice from the

allegedly deficient performance. See *Strickland*, 466 U.S. at 694. Such a showing was not made here.

¶ 45                                    III. CONCLUSION

¶ 46        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 47        Affirmed.

***People v. Prather*, 2022 IL App (4th) 210609**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Woodford County, No. 20-CF-103; the Hon. Michael L. Stroh, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Natalia Galica, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Gregory M. Minger, State's Attorney, of Eureka (Patrick Delfino, David J. Robinson, and John Connor, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |