2026 IL App (2d) 250327-U
No. 2-25-0327
Order filed  May 12, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

PARNELLA WILLIAMS, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Bianca Camargo, Judge, Presiding.
No. 22-CF-752

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial counsel and counsel for defendant's motion to reconsider sentence did not render ineffective assistance by failing to raise certain claimed sentencing errors during the sentencing hearing and in the motion to reconsider; because the claimed errors were either meritless or harmless, defendant did not show prejudice.

¶ 2    Defendant, Parnella Williams, appeals from an order of the circuit court of Kane County sentencing her to a four-year prison term after the revocation of her probation.  She argues that the attorneys who represented her at sentencing and on her motion to reconsider sentence denied her effective assistance of counsel by failing to make certain sentencing arguments.  We affirm.

¶ 3                              I. BACKGROUND

¶ 4　　On August 18, 2023, defendant entered a negotiated plea of guilty to a single count of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2020)) and was sentenced to 48 months' probation. As a condition of probation, she was forbidden from having any contact with her codefendant, Joseph Johnson. Sixteen months later, on December 11, 2024, the State filed a petition to revoke defendant's probation, alleging that she violated the no-contact condition. Defendant stipulated to the violation, the matter was continued for sentencing, and a presentence investigation report (PSI) was prepared.

¶ 5　　In the PSI, defendant reported her health history as follows. She had surgery for fibroids in 2009. In 2012, she was diagnosed with breast cancer, underwent a lumpectomy and chemotherapy and thereafter required yearly monitoring for cancer. She had a hysterectomy in 2016. In 2017, she broke her arm in a car accident. She also suffered from fibromyalgia and arthritis in her shoulders and hips. As to her mental health, she reported suffering from depression, anxiety, post-traumatic stress disorder (PTSD), and panic attacks. She was receiving treatment for her mental health conditions and was taking several prescribed medications for mental health and sleep issues. Medical records attached to the PSI documented defendant's (1) "chronic pain" due to neuropathy and fibromyalgia, (2) depressive disorder with "anxious distress," and (3) obsessive-compulsive disorder, and (4) PTSD.

¶ 6　　The PSI further stated: "[Defendant] said that she is currently feeling 'a little overwhelmed.' She helps out her grandmother with her dementia and her mother is unable to provide any additional services to her. Her sister has her hands full with her daughter who suffers from serious allergies."

¶ 7　　At the sentencing hearing, an Elgin police officer testified that he and another officer encountered defendant and Johnson together in her home on December 3, 2024. The encounter

was recorded by the officer's body-worn camera, and the video was admitted into evidence. Defendant was recorded telling the officers that she needed Johnson at her home to remove his belongings. Although the officers reminded defendant and Johnson that they were to have no contact with one another, they got into a car together at the end of the encounter with the officers.

¶ 8 Defendant's attorney, Marcie Sanchez Tio, stated:

"I guess I suppose these are some updates to the [PSI] as well because it was completed a while—I believe over a month ago.

[Defendant] suffers from fibromyalgia, neuropathy, and arthritis and this is due to her history of cancer and the treatment from that. She experiences daily and chronic pain that she manages or tries to manage with exercise, diet, and more holistic measures. She was previously taking medication, but it was not producing the desired result, so she has attempted more holistic approaches.

She has indicated that her grandmother is currently in the hospital. She was admitted to the hospital for bladder issues and unfortunately her grandmother has not been able to leave at this time. [Defendant] and her uncle are both working to find long-term care for her elderly grandmother.

[Defendant] I guess shoulders a lot of the responsibility for caring for her grandmother. Her uncle is 76 years old and he assists as he's able, but he himself is visually impaired and [defendant] helps him as well. Before [defendant's] grandmother was in the hospital, she was going to the residence that her grandmother and her uncle lived at and helping both of them with cleaning, groceries, doctors' appointments, essentially any need that they were not able to meet themselves.

Further, Judge, I would proffer that when she was incarcerated in the Kane County Jail during this case, she did experience an increase in the pain she experiences and that's due to the fact that she essentially didn't have all of the tools she's using to manage it herself at the jail. She was given Tylenol to manage it, which was not sufficient. Additionally, the pain was worse because she was on beds with metal frames and a thin bad [*sic*]. So her symptoms became much worse while in custody."

¶ 9 Sanchez Tio proposed that defendant's probation be continued, citing the statutory mitigating factor that applies when imprisonment would endanger the defendant's medical condition. See 730 ILCS 5/5-5-3.1(a)(12) (West 2024). Sanchez Tio emphasized defendant's chronic pain and that "[h]er quality of life would deteriorate in custody where she's not able to have a comfortable bed or access to either the appropriate medications or the appropriate ways that she has been handling her pain."

¶ 10 Defendant made a statement in allocution in which she discussed the care she provided for her grandmother and uncle:

"My grandmother is 93. We're trying to put her in to [*sic*] critical care for her last days and I just want to be able to go on with my life and help my grandmother as she transitions from this earth and I know while she transitions, I'm going to be responsible for my uncle who is almost 76 and he's visually impaired. That's going to be my responsibility. I can't leave him because he sacrificed and tried to help my grandmother."

¶ 11 The trial court sentenced defendant to the minimum four-year prison term for a Class 1. In pronouncing sentence, the court stated it had considered all statutory and nonstatutory factors in aggravation and mitigation and, "[found] that the following factors in aggravation appl[ied]. Factor two, three, and seven." These numbered factors apparently refer to the following: defendant

- 4 -

received compensation for committing the offense (730 ILCS 5/5-5-3.2(a)(2) (West 2024)), defendant had a history of prior delinquency or criminal activity (*id.* § 5-5-3.2(a)(3)), and the sentence was necessary to deter others from committing the same crime (*id.* § 5-5-3.2(a)(7)).

¶ 12     The court did not elaborate on these factors, nor articulate the weight it assigned these factors.  In mitigation, the court found that defendant's conduct neither caused nor threatened physical harm to another.  *Id.* § 5-5-3.1(a)(1).  The court further stated:

> "I think it's important to note that when I was reading the PSI, it appears that [defendant] began a relationship with [Johnson].  There was a statement.  I can't get to it right now, but it outlined like she felt like she could change him, but in reality, he has changed [defendant].
>
> For over a period of 40 years, [defendant] has remained out of serious criminal activity, but then here comes [Johnson] and [defendant] *** allowed [Johnson] to bring [her] down to the ground, but he's not all to blame because [defendant is] a smart, able woman who by [her] own decisions decided to sell drugs *** and to facilitate in [*sic*] drug transactions."

Describing defendant's contact with Johnson as "[t]he infraction that we're here for today," the court observed that defendant "summon[ed] [Johnson] back into [her] life" after he had been released from prison.  The court noted that when defendant got into a car with Johnson after being told they were to have no contact, "[i]t's like a slap in the face."  Addressing defendant, the court remarked, "[Johnson] is your downfall and he will continue to be your downfall because you, as an adult, are letting him be your down fall [*sic*]."  The court added, "You are not a menace to society by yourself, but you are a menace to society with [Johnson] in your life because you may

not be the facilitator of all of his actions, but you are definitely a part of all of that and that's just as bad."

¶ 13    Sanchez Tio subsequently withdrew as counsel for defendant, who then retained attorney Michael Combs to represent her. Combs filed a motion to reconsider sentence, arguing that, given defendant's "lack of criminal history and overall compliance with her terms of probation," imprisonment was an excessive sentence and continuation of probation was more appropriate. Following a hearing, the trial court denied the motion, stating:

> "[Defendant] has to be responsible for her own actions. *** [S]he was actively delivering drugs. She was actively facilitating the delivery. She was actively doing things. *** She wasn't some passive individual next to *** Mr. Johnson. That's the same thing with this, is that this wasn't a situation where something happened to [defendant]. She made it happen. And then once it was brought to her attention, she still didn't care. She still got in the car and drove away with [Johnson]. So, that's what the [c]ourt's considering, what's the rehabilitative potential of [defendant] to comply with anything short of [a prison] sentence. I don't have any faith that she would be able to comply with that, and I have to consider that, what is the rehabilitative purpose, what is the rehabilitative potential of [defendant]."

After the court announced its reasons for denying the motion, defendant advised the court that her grandmother had passed away. She added, "My uncle is almost blind. I need to find someone for him to—." The court interrupted her, saying it would not "relitigate the hearing." Defendant filed a timely notice of appeal.

¶ 14                                    II. ANALYSIS

¶ 15    Defendant argues that she received ineffective assistance of counsel from Sanchez Tio, who represented her at the sentencing hearing following the revocation of her probation, and from Combs, who represented her in connection with her motion to reconsider the new four-year prison sentence.

¶ 16    Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

¶ 17    Defendant maintains that Sanchez Tio rendered ineffective assistance by failing to object when, in pronouncing sentence, the trial court relied on a factor inherent in the offense, ignored two statutory mitigating factors, and punished defendant for her probation violation rather than for the underlying offense. However, the claimed errors became apparent only when the trial court orally pronounced sentence. Courts have held that a defendant cannot reasonably be expected to interrupt a trial court's sentencing decision in order to preserve, for further review, an error in that ruling. See, *e.g.*, *People v. Saldivar*, 113 Ill. 2d 256, 266 (1986); *In re Commitment of Montanez*, 2020 IL App (1st) 182239, ¶ 85. The defendant may instead withhold a contemporaneous objection and preserve the issue in a motion to reconsider sentence. See *People v. Chipman*, 2025 IL App (4th) 241038-U, ¶ 17. It is true that Combs, who succeeded Sanchez Tio as counsel for defendant, omitted the claimed errors from the motion to reconsider defendant's sentence. However, even assuming for the sake of argument that that omission represents deficient performance, there is, as we explain, no reasonable probability that raising the claimed errors

would have had any effect on the court's sentencing decision. Accordingly, defendant has not shown prejudice.

¶ 18     When a defendant violates a condition of probation, the trial court may continue probation, either with or without modifying the probation conditions, or may impose any other sentence authorized when the defendant was originally sentenced. 730 ILCS 5/5-6-4(e) (West 2024). Unlawful delivery of a controlled substance is a Class 1 felony punishable by a prison term of not less than 4 years and not more than 15 years, periodic imprisonment for a term of 3 to 4 years, or a term of probation or conditional discharge not to exceed 4 years. *Id.* § 5-4.5-30(a), (b), (d). Here, the trial court imposed the minimum prison term.

¶ 19     "In the context of a sentencing hearing, prejudice [under *Strickland*] must be assessed based on the totality of the evidence[.]" *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 80. We first consider whether defendant was prejudiced because Combs failed to argue that the trial court erred by considering, as a factor in aggravation, that defendant received compensation for committing the offense. See 730 ILCS 5/5-5-3.2(a)(2) (West 2024). "It has been recognized *** that few drug deliveries are made as gifts, and compensation is an implicit factor in most drug transactions; therefore, it is generally improper to consider compensation to be a factor in aggravation." *People v. McCain*, 248 Ill. App. 3d 844, 851 (1993). Although consideration of this factor in this case was indeed improper, it is abundantly clear that the factor had little, if any, impact on the trial court's decision to impose the minimum prison term rather than continue defendant's probation. In explaining its sentence, the court mentioned this and other aggravating factors in passing, simply referencing the statutory subsections without articulating the substance of the factors, how they applied to this case, or the weight the court was assigning them. The court then proceeded to a lengthy discussion of defendant's apparent inability or unwillingness to avoid

contact with Johnson, which jeopardized her prospects for rehabilitation. Thus, the court did not appear to give more than minimal weight to defendant's receipt of compensation. There is no reasonable probability that raising the error in defendant's motion to reconsider would have led the trial court to a lesser sentence. Accordingly, defendant has not shown prejudice from Combs's failure to raise the issue. See *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 94 ("Because the circuit court gave 'minimal' weight to the factor of compensation, we find no reasonable probability that the sentence that [the] defendant received for unlawful delivery of methamphetamine would have been lighter had defense counsel objected to the consideration of compensation.").

¶ 20    We next consider whether Combs was ineffective for failing to argue that the trial court erred by ignoring two statutory mitigating factors: that imprisonment would endanger her medical condition (730 ILCS 5/5-5-3.1(a)(12) (West 2024)) and that she "serve[d] as the caregiver for a relative who is ill, disabled, or elderly" (*id.* § 5-5-3.1(a)(19)).

¶ 21    "We *** presume that the [trial] court has considered all relevant evidence in mitigation, absent some affirmative indication to the contrary beyond the sentence itself." *People v. Campos*, 2024 IL App (2d) 230056, ¶ 54. There is no affirmative indication in the record that the trial court did not consider the mitigation evidence in question. The issue then becomes whether the court appropriately weighed the evidence. We afford a trial court's sentencing decision "great deference" in light of its "broad discretion" in sentencing. *Id.* ¶ 48. We "must not substitute our judgment for that of the trial court merely because we would have weighed the mitigating factors differently." *People v. Foster*, 2022 IL App (2d) 200098, ¶ 53. We note that "[t]he most important sentencing factor is the seriousness of the offense." *People v. Flores*, 404 Ill. App. 3d 155, 159 (2010).

¶ 22      We cannot say that the trial court gave any of the evidence in question less weight than it warranted.  First, the only indication that imprisonment would endanger defendant's medical condition was Sanchez Tio's proffer that defendant's pain increased while in jail "due to the fact that she essentially didn't have all of the tools she's using to manage it herself" and because she "was on beds with metal frames and a thin bad [*sic*]."  However, there is no reason to assume that conditions would be the same in a Department of Corrections facility, that defendant's needs could not be accommodated, or that appropriate medical treatment would be unavailable.  Evidently, the court gave this factor little or no weight, which was not an abuse of discretion.  See *People v. Prather*, 2022 IL App (4th) 210609, ¶ 40 (trial court did not abuse its discretion by giving no weight to statutory mitigating factor that the defendant's incarceration would negatively impact his children, where "the circuit court had no solid reason to expect that [the] defendant's children or stepchildren would suffer any negative effects from his imprisonment").  Because the court properly weighed the factor, there is no reasonable probability that the court would have altered the sentence if Combs had challenged the court's consideration of the factor.

¶ 23      Second, and likewise, the trial court apparently gave little weight to defendant's role in caring for her grandmother and her uncle.  This, too, was not an abuse of discretion.  Sanchez Tio proffered that defendant was helping "with cleaning, groceries, doctors' appointments, essentially any need that they were not able to meet themselves."  Although such assistance was significant, it is not clear that it was indispensable or that it qualified as caregiving in its fullest sense.  Notably, in her statement in allocution, defendant indicated that "[w]e're trying to put [defendant's grandmother] in to [*sic*] critical care for her last days."  Thus, it was reasonable for the court to conclude that defendant's role as a caregiver for her grandmother was coming to an end.  Indeed, at the hearing on the motion to reconsider, defendant informed the trial court that her grandmother

had passed away. As for defendant's uncle, she stated at the sentencing hearing that he was "going to be" her responsibility, not that he presently needed her care. At the hearing on the motion to reconsider, defendant had begun to comment on her uncle's near-blindness, and her need to make arrangements for him, when the court cut her off. Ideally, the court would have acknowledged defendant's role in assisting her uncle. But we cannot construe the court's silence to mean that it gave the factor no consideration. See *Campos*, 2024 IL App (2d) 230056, ¶ 54. It is clear the court believed that other factors predominated. At both hearings, the court stressed defendant's poor judgment—and associated lack of rehabilitative potential—as shown by the underlying drug offense and her continued contact with Johnson. As noted, the seriousness of the underlying offense was the most important sentencing factor. *Flores*, 404 Ill. App. 3d at 159. Because the court properly weighed the "caregiver" factor, there is no reason to believe that raising this factor in the motion to reconsider sentence would have persuaded the court to spare defendant a sentence of imprisonment. Thus, defendant has not established a reasonable probability of a more favorable outcome had Combs raised the issue. See *Prather*, 2022 IL App (4th) 210609, ¶ 44 (counsel's omission of certain mitigation theories from postsentencing motion was not prejudicial where there was no reasonable probability that raising the theories would have resulted in a lighter sentence).

¶ 24   Finally, defendant argues that Combs was ineffective for failing to argue that the trial court improperly punished her for the probation violation rather than the offense for which she was placed on probation. It is true that "a court resentencing a defendant for revocation of probation abuses its discretion where it imposes a sentence that is punishment for the conduct underlying the revocation, rather than punishment for the original offense." *People v. Miller*, 2021 IL App (2d) 190093, ¶ 23. However, "the sentencing court may consider the defendant's behavior while on probation to the extent that it evidences [her] rehabilitative potential." *Id.* We have said:

" ' "[A] sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense." ' " (Emphases in original.) *Id.* ¶ 24 (quoting *People v. Vilces*, 186 Ill. App. 3d 983, 986 (1989), quoting *People v. Young*, 138 Ill. App. 3d 130, 142 (1985)).

¶ 25 Defendant argues that the trial court "went beyond simply considering [defendant's] conduct while on probation [for] the underlying offense." Defendant notes that the court mentioned at sentencing that her probation violation was "the infraction that we're here for today." According to defendant, the court "commingl[ed] the original offense and the probation violation, sentencing [defendant] as punishment for making contact with Johnson."

¶ 26 We disagree. At both the sentencing hearing and the hearing on the motion to reconsider, the trial court's overarching concern was defendant's poor judgment and correspondingly low potential for rehabilitation. At the sentencing hearing, the court remarked that Johnson had "changed" defendant; as evidence of Johnson's influence, the court mentioned first the underlying drug offense committed with Johnson. The court then mentioned the "infraction," *i.e.*, the violation of the no-contact provision, but the court did so simply to highlight further evidence that Johnson had been defendant's "downfall." Later, at the hearing on the motion to reconsider, the court focused again on the broader issue of defendant's rehabilitative potential, mentioning both the underlying offense and the probation violation. Both were evidence of defendant's inability or unwillingness to cease contact with Johnson, which, for the court, was a primary consideration in determining how best to achieve the objective of rehabilitation, *i.e.*, preventing defendant from reoffending due to Johnson's bad influence. We are not "strongly persuaded" (internal quotation

marks omitted) (*Miller*, 2021 IL App (2d) 190093, ¶ 24) that the court sentenced defendant for the probation violation and not for the underlying offense. Therefore, since the court did not abuse its discretion, there is no reasonable probability that the court would have altered the sentence if Combs had claimed error.

¶ 27 We distinguish two cases cited by defendant, *People v. Varghese*, 391 Ill. App. 3d 866 (2009), and *People v. Gaurige*, 168 Ill. App. 3d 855 (1988). In *Varghese*, we were "convinced that the trial court punished [the] defendant for his conduct while on probation." *Varghese*, 391 Ill. App. 3d at 877. We commented that "the remarks of the trial court in their totality clearly indicate[d] that it never expressly considered [the] defendant's original offense when fashioning his sentence." *Id.* Rather, the court "focus[ed] on [the] defendant's conduct while on probation" and made only a "a passing reference" to the underlying offense. *Id.* Here, in contrast, the trial court expressly mentioned the underlying offense and considered it, together with the probation violation, as indicating defendant's lack of rehabilitative potential.

¶ 28 In *Gaurige*, 168 Ill. App. 3d at 871, the probation violation itself was a criminal offense and the "record [did] not show what factors, beyond the act resulting in revocation of probation, the trial court considered in imposing sentence." Here, in contrast, there was only one offense, and the trial court specifically indicated which statutory factors in aggravation and mitigation applied.

¶ 29                                        III. CONCLUSION

¶ 30 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 31 Affirmed.